ISABELLE MARTIN ET AL., PLAINTIFFS-RESPONDENTS, v. CITY OF ASBURY PARK, DEFENDANT-APPELLANT.

Submitted May 26, 1933—Decided September 27, 1933.

For the appellant, *James D. Carton.*

For the respondents, *Francis A. Gordon, John M. Mackenzie* and *Samuel J. Marantz.*

The opinion of the court was delivered by

CAMPBELL, CHANCELLOR. On July 27th, 1929, respondent Isabelle Martin was in a bathing pavilion, known as "Unit 8," constructed and owned by the appellant, city of Asbury Park, and by it leased with other bathing privileges to one Mitchell.

Mrs. Martin rented a bath house in this "unit" and, on the day mentioned, after being in the ocean and on the beach had gone to the showers provided in the pavilion and from there she proceeded to a stairway leading to the floor upon which her bathing compartment was located. She says the treads of the steps were wet, slippery and slimy; and so was the handrail, and that when she had reached the fourth or fifth step her foot slipped, she lost her hold on the rail and, there being only open risers, she was thrown backward and downward to the floor below and injured.

She, with her husband, brought suit against the city, and Mitchell, its lessee, a trial of which cause resulted in a verdict of $23,000 in favor of the plaintiffs-respondents, against the city-appellant only, the jury finding no cause of action

against the city's lessee, Mitchell. This verdict was subsequently reduced to $18,000, and from the judgment entered thereon the city appeals, urging several grounds for reversal under three points.

It is first urged that the trial court erred in refusing to direct a nonsuit. Under this it is argued: 1. No negligence in construction, or nuisance created by faulty construction, was shown by any proof that the steps were unsafe, improper or inadequate for the purpose for which they were designed and constructed.

Among the several charges of liability as against the city, is the outstanding one of improper construction of the stairway.

Much of the testimony, in this direction, is from the respondents' witness, Schmeider, which is largely devoted to the height of risers, widths of treads and matters of construction of a like character, which, to us, appears to be irrelevant to the actual situation which evidently caused the happening.

This witness did, however, testify that he was familiar with the standard and generally approved methods of construction of stairways in bathing establishments, frequented by large numbers of persons at seashore resorts, and that such methods required a non-slip tread or nosing for the purpose of making them non-slip, a condition and method of construction not found in the stairway in question, which consisted of a one-piece spruce tread with open risers.

The testimony of this witness is, to us, not impressive, but it existed, and was sufficient to send that issue to the jury for settlement, which was done, under instructions from the trial judge, which were not excepted to, and the jury must have found thereon in favor of the respondents, as it could have done upon the proofs. Whether the weight of the proof was sufficient and proper to warrant such a finding is a matter not before us.

2. That the appellant, city, could not be held liable because there was no proof of notice to it of any defective condition in the stairway.

In support of this insistence *Schnatterer* v. *Bamberger,*

81 *N. J. L.* 558; *Rom* v. *Huber,* 93 *Id.* 360; *affirmed,* 94 *Id.* 258; *Maphet* v. *Hudson and Manhattan Railroad Co.,* 98 *Id.* 369; *Bodine* v. *Goerke Co.,* 102 *Id.* 642; *Stark* v. *Great Atlantic and Pacific Tea Co.,* 102 *Id.* 694, and *Taylor* v. *Roth, Ibid.* 702, are cited but an examination of such cases will clearly demonstrate their inapplicability. In not one of them was the question of structural defect or improper construction involved.

We find no error in this direction.

3. That the appellant, city, was not liable, because, as landlord, it was not liable to a third party for the ruinous condition of premises let to another.

Hereunder appellant looks for support to *Naumberg* v. *Young,* 44 *N. J. L.* 331; *Murray* v. *Albertson,* 50 *Id.* 167; *Siggins* v. *McGill,* 72 *Id.* 263; *Reilly* v. *Feldman,* 103 *Id.* 517, and *Brown* v. *Webster Realty Co.,* 7 *N. J. Mis. R* 587, but here, again, an examination of the cases will clearly show that they are not authority for the proposition advanced by the appellant.

In none of these cases was the premises designed for use by the public for public purposes and use by large numbers of persons.

The true rule undoubtedly is that where an owner designs and devotes a building to public or semi-public use, the public is deemed to be invited to make such use thereof by the owner and the latter cannot evade responsibility of exercising due care to make it reasonably safe by demising it to a tenant.

Such is the text in 16 *R. C. L.* 1069, and such seems, likewise, to have been the burden and obligation placed by the courts of this state upon owners of such buildings. *Phillips* v. *Library Co.,* 55 *N. J. L.* 307; *Eckman* v. *Atlantic Lodge,* 68 *Id.* 10; *Smith* v. *Delaware River Amusement Co.,* 76 *Id.* 461, and *Johnson* v. *Zemel,* 109 *Id.* 197.

Such a legal doctrine has every power of logic to support it. To hold that an owner may construct a building to be used for public purposes and in such construction transgress every requirement of structural safety and escape liability therefor by the simple process of leasing to another by whom such public use is carried on would be absurd.

In this respect we find no error.

4. Finally under this point it is urged that the appellant, city, is not liable, because, being a municipal corporation, the enterprise was a governmental function.

Hereunder, and in support of this legal proposition, are cited *Tomlin* v. *Hildreth,* 65 *N. J. L.* 438; *Olesiewicz* v. *Camden,* 100 *Id.* 336; *Johnson* v. *Wildwood,* 102 *Id.* 606, and *Casey* v. *Bridgewater,* 107 *Id.* 163.

Again we are compelled to say that the appellant fails to present the dominant and controlling principle applicable.

*Tomlin* v. *Hildreth, supra,* seems to us to have no applicability to the matter before us.

To the other cases cited should be added *Bisbing* v. *Asbury Park,* 80 *N. J. L.* 416; *Karpinski* v. *South River,* 85 *Id.* 208; *Lehigh Valley* v. *Jersey City,* 103 *Id.* 574; *affirmed,* 104 *Id.* 437; *Zboyan* v. *Newark,* 104 *Id.* 258, and *Morgenweck* v. *Egg Harbor City,* 106 *Id.* 141.

Through all of these cases there is drawn a sharply defined line of responsibility of a municipal corporation to answer to an individual member of the public and such responsibility to so answer in damages is to be ascertained by the affirmative answer to either of two queries:

The first is: Did the occurrence arise out of a governmental or proprietary and business function?

The answer in the case before us, measured by the foregoing authorities is that the alleged injury arose out of the exercise of a proprietary or business function of the city.

The second inquiry is: If it arose out of the exercise of a governmental function was it the direct result of active wrong doing or negligence of the governing body or its agents? If so the municipality is liable in damages to any member of the public directly injured and damnified.

We are constrained to say that the proofs, in the case before us, made for a right of recovery against the appellant, city, on both of these propositions as measured by the authorities hereinbefore referred to.

Upon this ground, also, we find no error.

The second, general, point urged is that the trial court

erred in refusing to direct a verdict in favor of the appellant, city.

This has been fully answered against the contention of the appellant, under the previous point of alleged error in refusing to nonsuit.

The third and remaining ground for reversal is that the trial court erred in refusing, over objection, to permit an answer to the following question to the witness, Arend: *"Q. Is it customary for the architect in the city of Asbury Park to comply with the municipal regulation?"*

This question was obviously so improper that the trial judge's ruling excluding it needs no comment from us.

But the matter is not properly before us because the record shows there was no exception taken to the ruling of the trial court.

The judgment under review will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.