IDA TRONDLE, PLAINTIFF-RESPONDENT, v. LOT R. WARD, Jr., SUBSTITUTED TRUSTEE IN LIQUIDATION OF THE MONMOUTH TITLE AND MORTGAGE GUARANTY COMPANY, DEFENDANT-APPELLANT.

Submitted May 29, 1942—Decided October 15, 1942.

For the appellant, *Schroeder & Selser* (*John E. Selser,* of counsel).

For the respondent, *Chandler, Weller & Kramer* (*Julius E. Kramer,* of counsel).

The opinion of the court was delivered by

Perskie, J. The question we are asked to decide on the facts of this case is whether the landowner is liable for injuries sustained by a paid hotel guest of his tenants as the result of a latent defect in the leased premises.

The facts which give rise to the stated question are free from substantial dispute.

Plaintiff is a woman 78 years of age. During the summer season of 1939, she was a paid guest at the Royal Hotel, in Asbury Park, New Jersey, where she occupied a room "which was just to the right of the lobby as you go into the hotel." Because this room was "convenient" for plaintiff (she "did not have to go up and down stairs to get to it"), she reserved it for the months of July and August of 1940. Pursuant to that reservation, plaintiff, on July 1st, 1940, rented the same room, with board, at the rate of $25 a week, from Helen M. and Wilbur Wright, who operated the hotel as tenants under a lease with appellant, Lot R. Ward, Jr., substituted trustee in liquidation of the Monmouth Title and Mortgage Guaranty Company.

On August 4th, 1940, after having occupied the room for about a month, plaintiff, returning from breakfast, crossed the threshold of her room to enter it. As she did so, the floor gave way under her weight. She fell, broke her leg, and suffered other injuries. To recover damages for the injuries which she sustained, she brought suit against the two Wrights as tenants and, with leave of the Court of Chancery, against Ward, the trustee in liquidation appointed by that court, as owner and lessor.

The proofs indicate that the part of the floor which gave way was a board (tongue and groove type) about "five inches wide" and "about fifteen inches long," or "about eighteen inches long." The board was supported by a beam at one end but it did not extend to the next supporting beam. At the end nearest to the door it was "fastened with nails and the tongue and groove against the door sill." Save as indicated, there was no other support for the board. While there were no cracks in the flooring and the seams had not opened, the expert testimony is that it was the "old type flooring," and that this type of construction was not "very safe" construction, that it was "very unsafe construction."

There was further expert proof that the only positive way the defect in question could have been discovered would have been "to take up the saddle or else crawl under the building" and examine it from underneath. Although there was testi-

mony that this defect would manifest itself by certain "springiness" when the board was stepped on, this "springiness" depended upon other facts concerning which no testimony was offered. At all events, there is no proof that the "springiness" in the floor did in fact manifest itself to either the tenants or the owner or to anyone else.

Under the lease between the tenants and the landowner, the tenants were, among other things, obliged "to make all repairs" at their own costs and expense, to comply with laws and regulations for the "correction, prevention and abatement of nuisances," and were prohibited from making any "alterations, additions or improvements" without the "consent of the [landowner] in writing." The landowner, on the other hand, was given, among other things, the right to enter upon the premises at "all reasonable hours" for the purpose of "examining" same and "to make such repairs or alterations therein as [might] be necessary for the safety and preservation" thereof. And upon the failure of the tenants to make the necessary repairs, or to comply with the laws and regulations, as aforesaid, the landowner was further given the right to enter the premises and do all the things that the tenants were obliged to do, at the tenants' cost and expense.

The landowner offered no proofs. His tenants offered some proofs. Both made motions of nonsuit and to direct a verdict in their favor. The trial judge denied these motions and submitted the case to the jury on the plaintiff's theories of negligence and nuisance. The jury returned a verdict of no cause of action in favor of the tenants and in favor of the plaintiff against the landowner for $5,500. Hence this appeal by the landowner.

1. We think that the trial judge erred in denying the landlord's motion of nonsuit and to direct a verdict in his favor. At common law and to-day, apart from certain exceptions hereafter referred to, a landowner is not liable, in the absence of fraudulent concealment of a latent defect, for the "ruinous condition of the demised premises," either to his tenant or to his tenant's family. And the landowner is under

no greater duty to "invitees of the tenant," on the leased premises, than he is to the "tenant himself." *LaFreda* v. *Woodward,* 125 *N. J. L.* 489, 492, 493, and cases there collated; 15 *Atl. Rep.* (2d) 798, 800; 130 *A. L. R.* 1269. *Cf. Brittain* v. *Atlantic Refining Co.,* 126 *N. J. L.* 528, 532; 19 *Atl. Rep.* (2d) 793. An exception was, however, made to this rule in those cases where the letting was for a public or semi-public use and where the person injured came onto the premises in pursuance of such use. In such cases, the landowner holds out to the public the premises are "safe." He is, therefore, bound to exercise "reasonable care" to see that the leased premises have been properly constructed and are "maintained" in a "fit condition" for the purposes for which it is used. *Eckman* v. *Atlantic Lodge No.* 276, 68 *N. J. L.* 10; 52 *Atl. Rep.* 293; *Smith* v. *Delaware River Amusement Co.,* 76 *N. J. L.* 461; 69 *Atl. Rep.* 970; *Johnson* v. *Zemel,* 109 *N. J. L.* 197; 160 *Atl. Rep.* 356; *Martin* v. *Asbury Park,* 111 *N. J. L.* 364; 168 *Atl. Rep.* 612. Originally, this exception extended to cases where the letting was temporary or where the tenant would not, under the circumstances, have the time to make either an examination of the leased premises or the repairs. *Cf. Eckman* v. *Atlantic Lodge No.* 276, *supra.* Subsequently, the landowner's liability was extended to those cases where the premises were not only "designed" for "use" by the public for "public or semi-public purposes" but where the premises additionally entailed the admission of a "large number of persons," as patrons of the lessees. (*Martin* v. *Asbury Park, supra.*) That is the number of persons must be "large in the sense of great as opposed to small." *LaFreda* v. *Woodward, supra* (at *p.* 495). Mr. Justice Heher, for this court, points out in the case of *LaFreda* v. *Woodward, supra* (at *pp.* 494-495), that our holding in the cases of *Eckman* v. *Atlantic Lodge No.* 276, *supra,* and *Martin* v. *Asbury Park, supra,* is substantially the "criterion of the rule" in the *Restatement of the Law on Torts,* § 359, which reads as follows:

"A lessor who leases land for a purpose which involves the admission of a large number of persons as patrons of his

lessee, is subject to liability for bodily harm caused to them by an artificial condition existing when the lessee took possession, if the lessor

(a) knew or should have known of the condition and realized or should have realized the unreasonable risk to them involved therein, and

(b) had reason to expect that the lessee would admit his patrons before the land was put in reasonably safe condition for their reception."

In light of these principles, which are firmly imbedded in the jurisprudence of this state, the proofs in the case at bar did not warrant the submission of the case to the jury, either on the theory of negligence or on the theory of a nuisance.

2. *As to negligence.* However fairly a hotel may be and has been classed as a public or semi-public place (see cases collated in *Anno. Landlord's Liability to Business Patron, c. Hotels and Restaurants, Boarding Houses, 123 A. L. R. 878, et seq.,* and 89 *U. of P. Law Review* 1104), we see no reason to reconsider the stated principles which with us are determinative of the question as to what constitutes public or semi-public premises. For quite recently (October 10th, 1940) we carefully considered and adhered to these principles notwithstanding the criticisms aimed at them. See *LaFreda* v. *Woodward, supra* (at *pp. 495, et seq.*).

There is no proof to show who constructed the building, or when it was constructed, or when the landlowner acquired title thereto. Nor is there any proof that the premises were constructed for hotel purposes. Nor is there any proof to indicate the extent to which the premises were in fact devoted to a public or semi-public use. Nor is there any proof that a "large" number of persons were patrons of the tenants. Nor is there any proof that the landowner knew or should have known of the condition or realized or should have realized that an unreasonable risk was involved. True the landowner repaired the premises after the accident but that is no proof of negligence. It is proof on the question of entry and control. *Perry* v. *Levy,* 87 *N. J. L.* 670; 94 *Atl. Rep.* 569; *Taylor* v. *Majestic Building and Loan Association,*

14. *N. J. Mis. R.* 699; 186 *Atl. Rep.* 594; *Dubonowski* v. *Howard Savings Institution,* 124 *N. J. L.* 368, 370; 12 *Atl. Rep.* (2d) 384. Here the landowner, as we have seen, reserved the right of entry to examine and repair the premises. The reservation of these rights did not, under the facts exhibited, obligate the landowner, in the discharge of his contractual obligation to his tenants, to take up the saddle, or crawl underneath the building to examine the condition of the flooring under the door. In short, plaintiff failed to raise, by our test, a jury question as to the landowner's negligence.

3. *As to nuisance.* The common law concept of a nuisance for which a landowner was liable has indeed undergone marked changes. No longer is his liability limited to cases in which the effect of the nuisance extended beyond the boundaries of his land. (See article by Mr. Laurence H. Eldredge, Adviser, *Restatement, Torts* (1934), 84 *U. of P. Law Review* 467.) But under the common law, as to-day, a landowner is liable who creates and maintains a nuisance or who buys into a subsisting and continuous nuisance created by one of his predecessors in title. *Cf. Savarese* v. *Fleckenstein,* 111 *N. J. L.* 574, 575; 168 *Atl. Rep.* 850; *affirmed,* 114 *N. J. L.* 275; 176 *Atl. Rep.* 322; *Schwartz* v. *Howard Savings Institution,* 117 *N. J. L.* 180, 183; 187 *Atl. Rep.* 171; *Garvey* v. *Public Service, &c., Transport,* 115 *N. J. L.* 280, 284; 179 *Atl. Rep.* 33. Here, as we have seen, there is no proof as to who was responsible for the construction, or that the latent defect in the construction existed at the time the tenant took possession of the premises, or when the landowner actually acquired title to the premises. (*Cf. Gainfort* v. *229 Raritan Avenue Corp.,* 127 *N. J. L.* 409 (second paragraph on *p.* 413); 22 *Atl. Rep.* (2d) 893.) Here again plaintiff failed to establish, by our test, a jury question as to the landowner's liability for nuisance.

This disposition of the cause makes unnecessary any discussion of the additional reasons claimed for a reversal.

Accordingly, the judgment is reversed. A *venire de novo* is awarded; costs to abide the event.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 15.