**CUTNAW, Plaintiff-Appellee, v. COLUMBUS (City), Defendant-Appellant.**

Ohio Appeals, Tenth District, Franklin County.

No. 5923. Decided October 21, 1958.

Guy R. Martin, Columbus, for plaintiff-appellee.

Russell Leach, City Atty., Alba L. Whiteside, Asst. City Atty., Columbus, for defendant-appellant.

## OPINION

By BRYANT, J.

This is an appeal from the judgment of the Columbus Municipal

Court. Walter R. Cutnaw, plaintiff in that court, appellee herein, brought suit against the city of Columbus, defendant below, appellant herein, for damages in the amount of $535. Cutnaw in his petition alleged that the city of Columbus operated an off-street public parking garage at 60 East Long Street in the city of Columbus where it parked cars for compensation; that on May 4, 1956 he left his 1951 Olds automobile at said parking garage to be parked; that an employee of the city of Columbus in said parking garage negligently handled said automobile, running it over a large piece of timber and backing it over the edge of the ramp letting the rear of the said car fall down and in the process causing the top of the automobile to be smashed in by the overhanging roof, doing substantial damage to the car.

Cutnaw made three specifications of negligence as follows: (1) backing his said automobile at a high rate of speed causing it to run over a piece of timber eight inches square, used as a backstop; (2) failing to keep the said car under control and (3) entrusting the parking of said car to a reckless and irresponsible attendant. Cutnaw claimed that as a direct and proximate result of the negligent act of an employee of the city of Columbus the value of his car, which had been $900 prior to the accident, was reduced to $400 with damage in the amount of $500 and further that he incurred expense in the sum of $35 for hired transportation for a total of $535 damages prayed for in the petition.

For its answer the city of Columbus admitted that it was a municipal corporation; that it operated a public off-street parking garage at the specified location; that it parks cars there for compensation "but not for profit"; that on the date in question Cutnaw left his said automobile at the said garage for parking and that while it was parked there "said automobile ran off the edge of the floor." The answer of the said city included a general denial for its first defense and for its second defense alleged the brakes on Cutnaw's automobile were defective and would not stop the automobile; that Cutnaw knew of this defect and was negligent in failing to warn employees of the city of Columbus of this defect and that said defective brakes were the proximate cause of the damage to Cutnaw's car. For its third defense the city of Columbus alleged that it operated the said parking garage in "the performance of a governmental function of said defendant."

Cutnaw in his reply denied that the brakes in the automobile were defective alleging that they were in good condition and further alleging that the accident was due to a garage employee accidentally stepping on the gas pedal when he intended to step on the brakes. Cutnaw denied that the operation of the public parking garage was the performance of "a governmental function." Cutnaw further alleged in his reply that the garage is operated for profit and that the city of Columbus in so operating it "acts as an individual enterprise" and not in the performance of a governmental function.

The matter was tried to a jury which returned a verdict unanimously agreed to by all twelve members thereof in the amount of $554 in favor of Cutnaw or $19 more than was prayed for in plaintiff's petition. On behalf of Cutnaw there was a motion to grant a remittitur in

the amount of $19 bringing the verdict and judgment down to the amount prayed for in the petition. On behalf of the city of Columbus two motions were filed, one asking that a mistrial be ordered and the other praying for judgment notwithstanding the verdict.

The trial court overruled the motion for mistrial and made a finding that there was nothing to indicate that the verdict of the jury was rendered under the influence of passion or prejudice but found that the verdict exceeded the amount of damage shown by the evidence and ordered a remittitur in the amount of $254, which the plaintiff accepted. The court entered judgment against the city for $300 damages and costs. The court further overruled the motion for judgment notwithstanding the verdict whereupon the city of Columbus filed its notice of appeal and thereafter its brief and assignment of errors containing eleven alleged errors.

The first assignment of error relates to the admission and exclusion of evidence with considerable objection being made to the bill for painting the automobile. We do not agree that this is objectionable as it is merely one of the many forms of evidence, which taken together with other evidence, gave the jury the necessary facts upon which to determine the ultimate questions in the case. We have examined plaintiff's exhibits one, two and three, being photographs of the exterior of plaintiff's automobile indicating that substantial damage had been done thereto. With reference to the exclusion of testimony said to be part of the res gestae, it does not appear that this was prejudicial to the defendant. In our judgment the first assignment of error is not well taken. We shall now give our attention to the remaining assignments of errors complained of in numbers two through ten excluding therefrom assignment of error four. We will consider assignments of errors four and eleven separately.

The second and third assignments of errors relate to the overruling of defendant's two motions for directed verdict; assignment five complains that the verdict was excessive in amount and was the result of passion and prejudice on the part of the jury; the sixth assignment complains that the verdict is too large; the seventh assignment complains that the verdict and judgment are not sustained by sufficient evidence; the eighth assignment is that the verdict and judgment are contrary to law; the ninth assignment is that the judgment is excessive and the tenth assignment is that the verdict and judgment are against the manifest weight of the evidence.

We have read the record in this case and feel that these assignments of errors are not well taken. Most of the facts in this case are not in dispute. Many important matters are admitted and such matters are entitled to be taken as true along with reasonable inferences arising therefrom. Plaintiff appeared to be a regular customer at this parking garage. The jury might well have believed that the automobile, including its brakes, was in good condition when it was turned over to the attendant. The jury also might have inferred that the brakes were in good working order when the car was parked in the stall for two

automobiles. Whether the alleged failure of brakes was the cause of the subsequent accident or whether it was the manner in which the car was handled, was a question of fact for the jury to determine. They were in a position to see the witnesses and to observe their demeanor during their testimony. The evidence was adequate to sustain their verdict up to the amount prayed for in the petition and as to the $19 excess, the trial court promptly and clearly ordered a remittitur, which not only cured this $19 defect but reduced the amount of judgment from $554 down to $300. The plaintiff promptly accepted the reduced figure.

We conclude, therefore, that the several assignments of errors between numbers two and ten, both inclusive excepting four, are not well taken and must be overruled.

Coming now to the assignment of error number four, namely, the overruling of a motion for mistrial based upon the $19 excess amount of the verdict, we feel that the remittitur ordered by the court of $254 cured this defect and the defendant is no longer in the position to avail himself of it. While the petition makes no mention of interest on the claim, the jury may have had this in mind. The fourth assignment of error is not well taken and must be overruled.

Most of the space in the briefs was devoted to a discussion of the eleventh assignment of error. The defendant contends that the operation of the Long Street parking garage of the city of Columbus is a governmental and not a proprietary function and that, therefore, the city is immune from tort liability in connection with its operation. The city, therefore, as its eleventh assignment of error, challenged the ruling of the trial court that said garage is not a governmental function.

It cannot be successfully urged nor is it contended in this case that tort liability or liability for damages attaches to any of those functions or operations carried on by municipal corporations which are properly classified as governmental functions. This is true notwithstanding severe criticism of the harsh results sometimes arising from its application. The difficulty arises in determining which are governmental and which are proprietary functions.

In the case of **Broughton v. City of Cleveland, 167 Oh St 29,** in which the Supreme Court decided that garbage collection was a governmental function and hence the municipality was immune from liability for its negligent acts in connection therewith, Zimmerman, J., at p. 30 of the opinion had this to say:

"The generally recognized rule that a municipality is not liable for torts committed by its employees in the exercise of a function of the municipality which is governmental in character has been subject to sharp criticism. It is argued that such rule having its origin in the ancient and obsolete maxim that 'the king can do no wrong' has no place in this modern day with its enlightened sociological concepts and governmental changes, and that the rule of nonliability is unfair and unjust in that the burden of damages resulting from the tortious or wrongful acts of the government should be removed from the person who sustains them and cast upon the whole community comprising the

18

government, which could bear the loss with little hardship or inconvenience. and ought to do so. It must be conceded that this approach is not without logic and force.

"However, in a great majority of jurisdictions, the rule of municipal nonliability for torts occasioned when a governmental function is being performed still obtains. Through a long line of decisions, extending to the present time, Ohio has consistently followed and applied the rule that. except as otherwise provided by statute, municipal corporations are exempt from liability for negligence in the performance or nonperformance of their governmental functions."

Judge Zimmerman then cites a number of cases which he described as representative over the years in which the question has been before the court. He then continues at p. 31 as follows:

"Perhaps we are behind the times, but, in the absence of legislation by the General Assembly, this court is not yet ready to abandon the position adopted and retained for so many years.

"**It is sometimes difficult to differentiate between activities which are governmental and those which are proprietary. * * ***" (Emphasis added.)

One of the early cases dealing with the question of liability or nonliability of municipal corporations for their allegedly tortious acts or omissions is that of **Western College of Homeopathic Medicine v. City of Cleveland, 12 Oh St 375,** in which Gholson, J., in the course of his opinion at p. 377, says:

"It is obvious that there is a distinction between those powers delegated to municipal corporations to preserve the peace and protect persons and property, whether to be exercised by legislation or the appointment of proper officers, and those powers and privileges which are to be exercised for the improvement of the territory comprised within the limits of the corporation, and its adaptation to the purposes of residence or business. As to the first, the municipal corporation represents the state—discharging duties incumbent on the state; as to the second, the municipal corporation represents the pecuniary and proprietary interests of individuals. As to the first, responsibility for acts done, or omitted, is governed by the same rule of responsibility which applies to like delegations of power; as to the second, the rules which govern the responsibility of individuals are properly applicable."

The Western College case, supra, involved the alleged liability of the city for damage to a building due to mob violence. The city of Cleveland was held not liable for damages done by a mob. To the same effect is the holding in **Wheeler v. City of Cincinnati, 19 Oh St 19,** involving a city fire department, in which the syllabus provided in part as follows:

"* * * and a city is not liable to individuals for damage resulting from a failure to provide the necessary agencies for extinguishing fires, or from the negligence of officers or other persons connected with the fire department."

Another early case is **Springfield v. Spence, 39 Oh St 665,** holding there is no liability on the part of the city under special conditions for inadequate provision for surface water drainage.

In **Frederick v. City of Columbus, 58 Oh St 538,** the principle of non-liability in case of a governmental function again was affirmed where the fire department negligently permitted a fire tower to fall upon and kill a passenger in a nearby carriage.

As repeatedly stated by the courts in their opinions the real difficulty arises in determining under the facts of a particular case whether the function or operation of a municipal corporation is governmental or proprietary.

Pertinent here is an annotation on "Municipal establishment or operation of off-street public parking facilities" found in 8 A. L. R. (2d), p. 373, published in 1950, at p. 397, VI, "Municipal Liability or Immunity," §15, "In general; function as governmental or proprietary." In said annotation there appears the following statement:

"As the above heading indicates, this portion of the annotation considers whether a municipal corporation is subject to liability in tort or as a bailee in maintaining or operating an off-street public parking facility, or is protected from liability in such respects by the doctrine of governmental immunity. The solution of this problem usually depends upon whether the particular parking project is regarded as being a governmental function of the municipality, in which case it is immune from liability, or a proprietary function in the pursuit of which the municipality is subject to liability as would be a private operator of a parking facility. Sometimes, however, statutes may expressly control as to municipal liability when engaging in such projects."

Unfortunately the balance of the annotation discloses that the writer found no cases in point either in Ohio or elsewhere in this country with the exception of Pennsylvania where there appeared to be two diametrically opposed rulings. In one of them, Kappel v. Pittsburgh (1929, Pa), 77 Pittsb Leg J 218, it was held that the maintenance of a parking station by Pittsburgh was an exercise of police power while in a later case, Automobile Underwriters, Inc. v. Pittsburgh (1942) 44 Pa. D & C 63, the court disagreed with the views taken in the Kappel case, supra, and concluded that maintenance of a public parking station by a city was not an exercise of police power and that the operation was in essence a commercial and private venture constituting a proprietary function of the city in the pursuit of which it was subject to liability for the negligence of its employees. The opinion at p. 70 in the later case states:

"We believe no distinction should be made between the owners and proprietors of private parking lots and garages who are liable both for breach of contracts and torts of their servants, agents, and employees, and a municipality when it 'embarks in an industrial enterprise through corporate form,' for in so doing it 'places its name and its sovereign position on the same plane as that of any other stock company or dealer in a similar commodity': . . ."

Some idea of the difficulty in distinguishing governmental and proprietary functions is illustrated by Zimmerman, J., in the Broughton case, supra, in which he states that the Supreme Court of Ohio

has held that the construction of a sewer by a municipality is a governmental function, citing **Hutchinson v. City of Lakewood, 125 Oh St 100,** and **State, ex rel. Gordon, City Attorney v. Taylor, 149 Oh St 427** and **435.** However, the Supreme Court has held, Judge Zimmerman points out, that after such sewers are completed by a municipality, that the maintenance and repair thereof by a municipality is a ministerial or proprietary undertaking in the performance of which the municipality is not absolved from tort liability, citing the following cases: **City of Portsmouth v. Mitchell Mfg. Co., 113 Oh St 250; City of Salem v. Harding, 121 Oh St 412,** and **Doud v. City of Cincinnati, 152 Oh St 132.**

We have examined the authorities cited in the briefs in this case in the hope of finding a decision by the Ohio Supreme Court directly in point. Most persuasive, of course, would be a decision in a jury case in which the plaintiff claimed to have suffered injury or damages arising out of the alleged negligent operation of a parking garage operated by a municipal corporation. In this search we have been unsuccessful. The court which tried the case was faced with the same problem.

In a well-reasoned opinion in the Columbus Municipal Court, Schwarzwalder, J., has this to say:

"The question still remains—Is the operation of a City owned parking garage a governmental or proprietary function?

"On two different occasions, legal questions involving the operation of the Columbus Long Street parking garage have been before the Ohio Supreme Court. In **State, ex rel. Gordon v. Rhodes, 156 Oh St 81,** the Supreme Court held that a municipal corporation may construct, operate and maintain an off-street parking garage. Unfortunately the Supreme Court did not decide the question as to whether or not in so operating a garage the City was exercising a governmental or proprietary function.

"In **in re Exemption, 167 Oh St 256,** the Ohio Supreme Court held that real property acquired and used by a municipality for off-street parking purposes is not exempt from taxation. Again, the Court did not see fit to specifically say that the operation of a parking garage is a governmental or a proprietary function.

"Counsel for defendant City argues with considerable vigor that in the Rhodes case, supra, the Supreme Court has at least strongly indicated, if not decided, that the operation of the Columbus parking garage is a governmental function. * * *

"With this contention this Court cannot agree. That the Supreme Court was using the phrase 'public or governmental purpose as distinguished from private' in relationship to the question of whether or not the City could **build** such a garage and not a relationship to tort or contract liability of the City, once the garage is built, is obvious * * *.

"Note that Judge Middleton does **not once mention** tort or contract liability, but discusses public purpose or governmental purpose as it relates to constitutional questions raised by the issuance of bonds to finance the building of the garage.

"The Rhodes and the In Re Exemption cases cited above are not despositive (dispositive) of the question before this court."

We are of course aware of **Cleveland v. Ruple, 130 Oh St 465,** in-

volving the use of the Exhibition Hall in Cleveland for public parking. That case, however, was an action for an injunction brought sometime after the completion and occupation of the Exhibition Hall in which the plaintiff was the receiver for a competing parking garage open to the public but which was privately owned, who also sued as a taxpayer. There was no claim in that case that there had been damage either to any person or property as the result of the negligent operation of the Exhibition Hall as a garage. The question of tort liability was simply not in the case.

The city of Columbus strongly urges that the operation of the Long Street parking garage is a governmental function and that the said city is, therefore, exempt from any liability as a result. The first case relied on by the city is **City of Wooster v. Arbenz, 116 Oh St 281.** This is of no help to the city as it merely held that cities were liable for damages due to defects in street, and that solely because of statute, but were not liable for damages due to the negligence of employees or the operation of trucks used in maintaining or repairing streets.

The next authority cited is Broughton v. City of Cleveland, supra, which was a case involving garbage collection, in which the court held that the collection of garbage by a municipality was both the exercise of a police power and the performance of a governmental function, hence no liability was permissible.

The next case upon which the city relies is **State, ex rel. Gordon v. Rhodes, 156 Oh St 81,** which already has been referred to in the portion of the opinion of Schwarzwalder, J., above quoted. We observe that this was an action in mandamus in which the city attorney of Columbus sought to mandamus the mayor and auditor of Columbus to affix their official signatures to bonds authorized by counsel to erect the same Long Street parking garage which furnishes the setting for the case now before the court.

It would seem obvious that the question decided was whether the city was authorized to build such a garage and if so, could they issue bonds to pay the cost thereof. Middleton, J., who write the opinion which occupied nearly twenty printed pages, at p. 87, wrote as follows:

"Reduced to its simplest terms, the question presented to this court for decision is, Does the city of Columbus possess the right and power to acquire and operate off-street parking facilities and, if so, can the cost thereof be financed by the issuance of mortgage revenue bonds which are to be secured only by such parking facilities and the revenues derived therefrom and which do not create a debt of the city and do not involve a pledge of the general credit of the city?"

It was in no sense an action in tort for damages claimed by an injured person, nor indeed could it be, for at that time the parking garage had not even been built. While the court held that such a garage could well be designated as a public municipal purpose for which revenue bonds might be issued, the question was not before the court for decision as to whether a tort action for damages growing out of negligence in the operation thereof would lie.

The next case relied on by the city is the companion case of **State,**

ex rel. Gordon v. Jones et al, 156 Oh St 100, another action in mandamus, in which the members of city council as members of the finance committee thereof are respondents. About the only new feature in the last mentioned case was that the bonds sought to be issued were obligations of the city and within the debt limit. It was not a suit for damages and no question was raised or decided as to whether an action in tort would or would not lie.

The same may be said of the next case cited, State, ex rel. Gordon v. Rhodes, 158 Oh St 129, which again was an action in mandamus to compel two city officials to sign bonds and in which the facts were nearly identical with the two cases just above cited except that the bond ordinance was amended to include a pledge of a portion of parking meter revenues to pay off the bonds. Again, the case was devoid of any attempt to collect damages and the holding offers no solution to this question.

The next case, Garrett, a Taxpayer v. City of Cincinnati et al., 166 Oh St 68, is even more remote to the question now before us. In the per curiam opinion, at p. 69, the court says that the question before it was whether a municipal corporation had the power to raise on-street parking meter fees without any relation to the cost of regulating parking and for the sole purpose of paying part of the cost of the off-street parking program.

The property of the said Columbus parking garage has been held not exempt from taxation. See In Re Application For Exemption of Real Property from Taxation: City of Columbus v. County of Franklin, 167 Oh St 256. The court arrived at that conclusion by construing §5709.08 R. C., as being in pari materia with §717.05 R. C. Thus the Supreme Court held that the said Columbus parking garage even though not constructed by virtue of special statutory authority but rather under its home rule powers as a charter city was not exempt and was subject to taxes. The court held that the legislative provision denying tax exemption to similar structures built under state law, had the effect of denying tax exemption in case of the Columbus parking garage, built under its charter powers.

Perhaps some light may also be shed upon the broad meaning of public purpose by reference to the case of In re Application for Exemption of Real Property from Taxation: City of Columbus v. County of Delaware, 164 Oh St 605, in which the court in the third branch of the syllabus held in part as follows:

"3. A public purpose of a proprietary nature is still a public purpose within the meaning of §5709.08 R. C. * * *"

It is clear, therefore, that the holding that said parking garage is a public purpose did not decide that it was either governmental or proprietary.

It does not appear to us that there is any reason, either in authority or logic, for calling the operation of said parking garage an essential governmental function, no matter how useful or desirable or well authorized it may be. We feel it is clearly a proprietary function and that the court below was fully justified in so holding.

For the reasons above set forth we conclude that the operation of the said Columbus parking garage, while having the characteristics both of a public and a municipal function, is in the nature of a proprietary function and not a governmental function from which it follows that the trial court did not commit error in so holding. The eleventh assignment of error is not well taken and must be overruled. Having concluded that none of the assignments of error are well taken, the judgment of the court below must be and hereby is affirmed.

PETREE, PJ, MILLER, J, concur.