62 N.J. Super. 166 (1960)
162 A.2d 314
RICHARD WEEKS, PLAINTIFF-RESPONDENT,
v.
THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1960.
Decided June 24, 1960.
*167 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Thomas M. Kane argued the cause for appellant (Mr. Vincent P. Torppey, attorney; Mr. Jacob M. Goldberg, on the brief; Mr. James Abrams, of counsel).
*168 Mr. Milton Yormack argued the cause for respondent (Mr. Ira J. Zarin, attorney; Mr. Yormack, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a district court judgment in plaintiff's favor awarding him $750 in his action to recover damages for injuries suffered when he slipped and fell on the toilet room floor of a municipal swimming pool.
Newark owns and operates two indoor and four outdoor swimming pools, among the latter the one known as the Hayes Park West Pool. Plaintiff went there on July 26, 1958 at 4 P.M. and paid 10 admission, removed his clothes in the locker room and gave them to an attendant, and then proceeded to use the toilet facilities. As he was leaving he slipped on the floor, described as "wet, filmy and slippery," and fell to the ground, striking his head on the floor. He suffered a brain concussion which caused some disability for a period of time, as well as headaches and the usual post-concussion syndrome. There was no permanent injury. The trial judge found that the toilet floor condition had existed for some time, with film and scum on the floor which had not been removed by the attendants charged with checking conditions at the pool.
Admission to the pool was free between 10 A.M. and 3 P.M.; after that a charge of 10 a person was made. From 500 to 900 persons use the pool daily. At our request the city submitted figures for the pool in question, showing that during 1958 39,480 persons gained free admission, 14,733 paid, and total receipts were $1,473.30. The cost of operating the pool for the summer season was $18,867.84. Taking into consideration all four outdoor pools operated by the city, total receipts were $7,364.90 as against operational costs of $76,149.45. Free admissions to these pools totaled 226,537.

*169 I.
The core question to be decided here is whether the City of Newark is immune from liability for plaintiff's injuries by reason of R.S. 40:9-2, which provides:
"No municipality or county shall be liable for injury to the person from the use of any public grounds, buildings or structures, any law to the contrary notwithstanding."
The trial judge concluded that defendant was not immune because it operated the pool as a proprietary function, and that in such a case the statute is inapplicable.
Our study of the reach of the statute must start with the state of the law at the time of its enactment as L. 1933, c. 460, approved January 10, 1934. The matter was recently considered by Justice Hall, writing for the Supreme Court in Schwartz v. Stockton, 32 N.J. 141, 147-8 (1960):
"By 1934, the original broad concept of common-law governmental tort immunity in this State, enunciated by Board of Chosen Freeholders of Sussex County v. Strader, 18 N.J.L. 108 (Sup. Ct. 1840), had been judicially whittled down to this point: municipal activities were divided, very precisely and controversially, into two classes, governmental and proprietary. Where the tort occurred in connection with a proprietary function, liability was determined on ordinary principles of negligence without regard to the municipal character of the tortfeasor. Martin v. Asbury Park, 111 N.J.L. 364 (E. & A. 1933); Olesiewicz v. Camden, 100 N.J.L. 336 (E. & A. 1924). If the function was determined to be governmental, active wrongdoing had to be found, else there was no cause of action. Casey v. Township of Bridgewater, 107 N.J.L. 163 (E. & A. 1930). The rub had come in deciding what was governmental and what proprietary and what amounted to active wrongdoing. See Weintraub and Conford, `Tort Liability of Municipalities in New Jersey,' 3 Mercer Beasley L. Rev. 142 (1934).
Of course, the whittling process has progressed further since, by finding active wrongdoing in the governmental field from a negligent act of commission, by what might be said to be a more lenient attitude toward the proprietary classification, by assessing binding governmental action or inaction from the affirmative or negative conduct of officials and employees less high on the municipal ladder, and by refusing to extend the doctrine to new situations. Allas v. Borough of Rumson, 115 N.J.L. 593 (E. & A. 1935); Milstrey *170 v. Hackensack, 6 N.J. 400 (1951); Kress v. City of Newark, 8 N.J. 562 (1952); Kelley v. Curtiss, 29 N.J. Super. 291 (App. Div. 1954), reversed on other grounds 16 N.J. 265 (1954); Taylor v. New Jersey Highway Authority, 22 N.J. 454 (1956); Cloyes v. Delaware Township, 23 N.J. 324 (1957); Hartman v. City of Brigantine, 23 N.J. 530 (1957); Farkas v. Middlesex Board of Freeholders, 49 N.J. Super. 363 (App. Div. 1958); 12 Rutgers L. Rev. 179-191 (1957). 13 ibid. 53-57, 103-104 (1958). This New Jersey trend is in line with that being followed elsewhere. Cloyes v. Delaware Township, supra; Prosser, Law of Torts (2d ed. 1955) § 109, pp. 774-775; 2 Harper and James, The Law of Torts (1956) § 29.1, 29.2, 29.3, 29.5, 29.6."
The 1933 act was adopted shortly following the decision in Martin v. Asbury Park, 111 N.J.L. 364 (E. & A. 1933), and applied to school districts as well as municipalities and counties. By the Revision of 1937 the statute was separated into two parts, the provision regarding school districts being placed in the "Education" title (R.S. 18:5-30), and the remainder under "Municipalities and Counties" (R.S. 40:9-2).
The precise effect of the statute upon existing decisional law was considered by some of our lower courts soon after its passage. In Leeds v. Atlantic City, 13 N.J. Misc. 868, 181 A. 892 (Cir. Ct. 1935), plaintiff was injured while watching a football game in the municipally-owned Convention Hall. Judge Jayne held that it was to be presumed that the Legislature, in enacting the statute in question, was aware of the preexisting state law and its classification of governmental and proprietary functions, and remarked that "it is not to be inferred that the Legislature intended to make an exceedingly drastic alteration in the established law unless such an intention is clearly expressed or plainly exhibited by the words of the statute." Finding no such intention apparent on the face of the statute, he concluded that the Convention Hall operation, being similar in nature to a private enterprise and hence proprietary rather than governmental, defendant was not absolved from liability under the statute.
*171 And in Falcone v. Newark Board of Education, 17 N.J. Misc. 75, 4 A.2d 687 (C.P. 1939), a child was fatally injured by a slate slab which fell upon her in school. In assessing the statute's effect on the common law, Judge Hartshorne first noted the two exceptions to the general common law rule of nonliability of governmental bodies for negligence  active wrongdoing and proprietary activities. He remarked that "it is evident that the legislature, in enacting the above statute, intended to clarify and simplify this complicated legal situation, at least as far as injuries to the person were concerned * * *," and "That such act was intended to modify the common law, is further clear, not only from the generality of its language, but from the fact that such law is to apply, `any law to the contrary notwithstanding.'" The court then went on to say:
"Nevertheless, in their endeavor not to overrule the common law principles unnecessarily, the courts have found two exceptions to the statute. It has been held that personal injuries, arising from the use of streets and public ways, are not covered by the statute, since such streets or ways are not `public grounds, buildings or structures.' Hammond v. County of Monmouth, supra [117 N.J.L. 11 (Sup. Ct. 1936)]; Cohen v. Morristown, 15 N.J. Mis. R. 288; 190 Atl. Rep. 851; Selph v. Morristown, 16 N.J. Mis. R. 19; 195 Atl. Rep. 862. It has been further held that the act does not apply when the injury arises from the performance by the municipality of a proprietary, as distinguished from a governmental, function. This result is spelled out of the fact that it is `public grounds, buildings, or structures,' and not those of a private nature, to which the statute applies. Accordingly, a municipality remains liable for injuries arising in the conduct of a football game, to which an admission fee is charged. Leeds v. Atlantic City, 13 N.J. Mis. R. 868, 181 Atl. Rep. 892."
Falcone held that the maintenance of schools was a governmental function, and the statute barred liability. We note that although the court concluded that the statute was intended to change the common law, it did not indicate just what it considered that change to be.
Various courts have considered the statute subsequent to the Leeds and Falcone decisions. However, the precise effect *172 of the statute upon the common law classification of municipal and county activities as governmental or proprietary has never been expressly declared by our court of last resort. Note, however, the Supreme Court decision in Thompson v. Millville Board of Education, 11 N.J. 207 (1953), where plaintiff was injured when she fell upon a highly polished school floor. She claimed that the statute did not bar liability where, as was there asserted, defendant's agents had been actively negligent. The Supreme Court disagreed, and in affirming dismissal of the complaint said:
"The argument that the statute has reference to mere negligence and not active wrongdoing is untenable. It is not so phrased and such an intention cannot be spelled out by implication. The language is broad and all inclusive and nothing is left to implication. The wisdom of the statute is for the decision of the Legislature and this court may not ignore the plain statement of public policy therein contained." (11 N.J., at page 210)
Thus, if we search for a change in the law which the 1933 statute worked, the Thompson case demonstrates that the prior exception from nonliability in case of active negligence was abolished.
The Supreme Court has referred to either or both of the Leeds and Falcone cases in three decisions, without comment. None of them sheds much light on our problem. In Terranella v. Union Bldg. & Construction Co., 3 N.J. 443 (1950), a child was fatally injured while playing with large concrete pipes left on a public playground by a contractor in connection with the installation of a municipal storm sewer. The father sued the city, the board of education and the contractor. The Supreme Court held the verdict in favor of the city proper, and this "independently of the immunity we think is granted to the municipality under R.S. 40:9-2 * * *. See Falcone v. Bd. of Education, Newark * * *." The distinction between governmental and proprietary functions was not, of course, in issue.
In Cloyes v. Delaware Tp., 23 N.J. 324 (1957), affirming 41 N.J. Super. 27 (App. Div. 1956), a child was drowned *173 in an open tank at the defendant municipality's sewage disposal plant. We divided on the question of whether the trial court had properly concluded the activity to be governmental. In reversing, the majority of this court held the activity proprietary, while the concurring judge held it governmental. The Supreme Court, by a vote of 6-1, agreed with the Appellate Division majority. Justice (now Chief Justice) Weintraub, in referring to R.S. 40:9-2, said:
"* * * Therein some may find a legislative opinion recurring to Strader [Board of Chosen Freeholders of Sussex County v. Strader, 18 N.J.L. 108 (Sup. Ct. 1840), where the general rule of municipal nonliability was first enunciated in this State], whereas others will find in the narrowness of the statute an implicit approval of the judicial trend manifested beyond the immediate area of the statute. We note that defendants did not urge this statute here applies and hence we do not consider whether it might. See Leeds v. City of Atlantic City, * * *; Falcone v. Board of Education of Newark, * * *."
It will be seen that the Supreme Court did not in Cloyes disapprove of the decisions in Leeds and Falcone. Further, it is entirely reasonable to say that if the Supreme Court believed that R.S. 40:9-2 barred municipal liability in connection with the operation of this proprietary function, it would have said so despite the absence of defendants' reliance upon the statute.
The Supreme Court did not squarely meet the issue in its recent opinion in Schwartz v. Stockton, cited above, 32 N.J. 141. Plaintiff there was injured when she fell in a particular part of the borough hall ordinarily used for a fire house. The court sustained the immunity of the municipality under R.S. 40:9-2, notwithstanding the place of injury was being temporarily used by a private social service agency. In dealing with the statute the court said:
"* * * The introductory statement appended to the bill recites that `[t]he design * * * is to clarify the existing law as to the non-liability of counties, municipalities and school districts * * *.' Use of the verb `clarify' might at first blush suggest the aim to be a mere holding of the line at the then level of judicial decision in *174 the covered phase of the field, but this view seems unsound in the light of the title ["An Act establishing the non-liability of counties, municipalities and school districts by reason of an injury to the person from the use of any public grounds or buildings."] and of the absolute prohibition that `[n]o county, municipality, or school district shall be liable for' personal injuries in the specified circumstances, `any law to the contrary notwithstanding.' A turning back of the clock in this rather narrow sphere seems definitely indicated, perhaps, however, with `an implicit approval of the judicial trend manifested beyond the immediate area of the statute.' Cloyes, supra (23 N.J., at p. 331).
There can be no doubt the statute must apply if the activity or function being carried on is governmental. * * * Since we are convinced that here the relationship between the borough and the fire company belongs in the governmental classification, the building involved is a `public' one within the intendment of the statute. * * * So we do not reach or pass upon plaintiffs' contention that the act does not apply where the function carried on is proprietary. Cf. Leeds v. Atlantic City, * * *; see also Falcone v. Board of Education of Newark, * * *." (at pages 149-150 of 32 N.J.; italics the court's.)
Here, again, the court did not disapprove of Leeds and Falcone. There was naturally no occasion to enter into a discussion of those cases in view of the court's conclusion that the municipality's arrangement with the fire company was governmental in nature. But the very fact the Supreme Court had to determine that the activity was governmental shows at the very least that it questioned the application of R.S. 40:9-2 in a proprietary situation.
In sum, we are left with the Leeds case untouched. Our careful consideration of the Cloyes and Schwartz cases compels the conclusion that the Supreme Court would hold that the statute bars liability in connection with governmental activities but not proprietary functions. In short, the common law distinction is still with us insofar as application of the statute is concerned.
In our view, R.S. 40:9-2 does no more than insulate a municipality or county from liability for injury resulting from use of public buildings, structures or grounds devoted to a governmental function, whether liability is sought to be visited upon it either on the ground of simple negligence *175 or active wrongdoing. The statute does not grant immunity where such buildings, structures or grounds are devoted to a proprietary function.

II.
The question remains: Should Newark's ownership and operation of the Hayes Park West Pool be regarded as governmental or proprietary?
A majority of jurisdictions elsewhere hold that a municipality performs a governmental function and is immune from tort liability when it establishes and maintains a public swimming pool, even where a nominal charge is made. However, there is a strong minority holding that such activity is proprietary in nature, and therefore outside the scope of the rule which accords municipalities immunity from liability for torts committed in the exercise of a governmental function. Annotation, "Municipal operation of bathing beach or swimming pool as governmental or proprietary function, for purposes of tort liability," 55 A.L.R.2d 1434, 1438, 1444 (1957). Cases illustrating the former view  the so-called Massachusetts line of cases  are Bolster v. Lawrence, 225 Mass. 387, 114 N.E. 722, L.R.A. 1917B, 1285 (Sup. Jud. Ct. 1917); Gebhardt v. LaGrange Park, 354 Ill. 234, 188 N.E. 372 (Sup. Ct. 1933); Sroufe v. Garden City, 148 Kan. 874, 84 P.2d 845 (Sup. Ct. 1938); Heino v. Grand Rapids, 202 Mich. 363, 168 N.W. 512, L.R.A. 1918F, 528 (Sup. Ct. 1918); Selden v. Cuyahoga Falls, 132 Ohio St. 223, 6 N.E.2d 976 (Sup. Ct. 1937), where no fee was charged, and Handley v. Hope, 137 F. Supp. 442 (D.C. Ark. 1956), appeal dismissed 239 F.2d 647 (8 Cir. 1956), applying the Arkansas law; Hannon v. Waterbury, 106 Conn. 13, 136 A. 876, 57 A.L.R. 402 (Sup. Ct. Err. 1926); Hendricks v. Urbana Park District, 265 Ill. App. 102 (App. Ct. 1932); Mayor, etc., of Baltimore v. State, 173 Md. 267, 195 A. 571 (Ct. App. 1937); Nissen v. Redelack, 246 Minn. 83, 74 N.W.2d 300, 55 A.L.R.2d 1428 (Sup. Ct. 1955); Vaughn v. Alcoa, 194 *176 Tenn. 449, 251 S.W.2d 304 (Sup. Ct. 1952), where a nominal fee or one insufficient to yield a profit was charged. Cases illustrative of the latter (proprietary-nonimmunity) view  the so-called New York line of decisions  are Augustine v. Brant, 249 N.Y. 198, 163 N.E. 732 (Ct. App. 1928), reargument denied 250 N.Y. 537, 166 N.E. 315 (Ct. App. 1928); Felton v. Great Falls, 118 Mont. 586, 169 P.2d 229 (Sup. Ct. 1946); DeSimone v. Philadelphia, 380 Pa. 137, 110 A.2d 431 (Sup. Ct. 1955); Norberg v. Hagna, 46 S.D. 568, 195 N.W. 438, 29 A.L.R. 841 (Sup. Ct. 1923), later appeal Norberg v. Watertown, 53 S.D. 600, 221 N.W. 700 (Sup. Ct. 1928); Hoggard v. Richmond, 172 Va. 145, 200 S.E. 610, 120 A.L.R. 1368 (Sup. Ct. App. 1939); Ashworth v. Clarksburg, 118 W. Va. 476, 190 S.E. 763 (Sup. Ct. App. 1937), where no fee was charged, and Belton v. Ellis, 254 S.W. 1023 (Tex. Civ. App. 1923); Thayer v. St. Joseph, 227 Mo. App. 623, 54 S.W.2d 442 (App. Ct. 1932), where a nominal fee was charged.
The courts that follow the Massachusetts doctrine proceed generally on the ground that the maintenance of a swimming pool is in the interest of the public health and welfare. Those that follow the New York rule recognize the modern tendency is against municipal nonliability, and although the public health might incidentally be benefited, it must be recognized that a municipality which operates a swimming pool is acting as a legal individual voluntarily assuming a duty, not imposed upon it, for the benefit of a locality rather than the general public. Beyond this we find little in the listed decisions that is persuasive in establishing where the line of separation should be drawn between governmental and proprietary activity as regards municipal swimming pools. The reason which tips the balance in some cases  that the municipality charges no fee or derives no profit from the venture  cannot be accepted. In fact, it has been rejected as decisive in our jurisdiction. Cloyes v. Delaware Tp., above, 23 N.J., at page 334, quoting with *177 approval from Morgenweck v. Egg Harbor City, 106 N.J.L. 141 (E. & A. 1929). And see Seasongood, "Municipal Corporations: Objections to the Governmental or Proprietary Test," 22 Va. L. Rev. 910, 938 (1936), where it was said that
"* * * The nature of the service rendered is not affected by whether a charge is made or a profit earned. Who is to determine but the city itself what services it shall render free of cost or at less than cost? It may, as a question of policy, decide that light and power, low cost housing or transportation are to be entitled to the same status as police and fire protection, for which no charge is made. The city has a right to determine these questions. It should not be under an obligation to furnish services at cost or at rates fixed by Public Utilities Commission or by the competition of private companies. Liability or immunity and taxability should not depend upon whether there is a charge or profit."
That the municipal swimming pool is in the interest of public health or welfare is likewise not a valid test. Nearly all municipal activities will serve the health, comfort, safety or convenience of the inhabitants, and thus could lay claim to classification as governmental.
New Jersey has never directly ruled on the particular problem which concerns us. The editors of McQuillin, Municipal Corporations (3d ed. 1950), vol. 18, § 53.113, p. 457, after noting the split in the cases on classifying bathing beaches, bath houses and swimming pools as governmental or proprietary activities, ventured the prediction that
"* * * In view of the tendency of late decisions and the developments of the law on this subject, the rule will ultimately prevail that in maintaining parks, playgrounds, bathing pools and beaches, and like recreations, the city is performing a local function for its people and it should be held liable on the same basis as a private person or corporation. * * *"

III.
This court has heretofore expressed strong doubt as to the necessity or advisability of pursuing the governmental-proprietary distinction under prevailing social and economic *178 conditions. Its validity has been widely questioned; the trend of enlightened courts is to broaden the base of municipal tort liability for negligence instead of confining it within the bounds of artificial distinctions. See Cloyes v. Delaware Tp., above, 41 N.J. Super., at pages 36 and 38. We vigorously reaffirm the views there expressed in the main and concurring opinions. Only because the distinction between governmental and proprietary functions still remains embedded in our law do we proceed to explore some of the reasons advanced by authorities who have considered the problem of municipal immunity from liability.
Prosser, in his Law of Torts (2d ed. 1955), § 109, notes that most writers have agreed that none of the reasons advanced for denying municipal tort liability is sound, and all of them have at one time or another been rejected in the decided cases. See page 774. He further comments upon the great difficulty of classifying particular functions as governmental or proprietary (cf. Seasongood, above, who looks upon the rules which courts have sought to establish in solving this problem as being "as logical as those governing French irregular verbs"), and then observes that "Certain functions and activities, which can be performed adequately only by the government, are more or less generally agreed to be `governmental' in character, and so immune from tort liability." He cites examples familiar in our own decisions: police and fire protection, health measures, schools. On the other hand, says the author "when the city performs a service which might as well be provided by a private corporation, and particularly when it collects revenue from it, the function is considered a `proprietary' one, as to which there may be liability for the torts of municipal agents within the scope of their employment." Instances cited are where a municipality supplies water, gas or electricity, or operates a ferry, wharves or docks. Compare the examples given in our opinion in Cloyes v. Delaware Tp., above, 41 N.J. Super., at pages 33-34, and sewage disposal, established as a proprietary function by the case itself.
*179 Harper and James, in the second volume of their Law of Torts, § 296, pp. 1620-1621 (1956), note that the present distinction between governmental and proprietary functions is commonly rationalized by saying that the municipality is the agent or representative of the state in performing governmental functions, and so shares its immunity. However, it has no sovereignty and no immunity of its own. They go on to say:
"No satisfactory test has been devised for distinguishing governmental from proprietary functions. The state legislature has wide powers to determine the nature of a duty which it imposes or a privilege which it confers upon a municipal corporation. But the legislature rarely specifies whether a function is to be governmental or proprietary, and, where it gives no clear guide, the courts resort to one or more of several criteria in making the determination. Those most often invoked are (1) whether the function is allocated to the municipality for its profit or special advantage or whether for the purpose of carrying out the public functions of the state without special advantage to the city, and (2) whether the function is one historically performed by government. * * *"
These criteria are, however, considered "elusive and unsatisfactory."
The editors of McQuillin, Municipal Corporations (3d ed. 1950), vol. 3, § 53.29, pp. 213-14, likewise observe that what are governmental powers and duties, and what are corporate duties, is not subject to precise definition, further than to say that "The powers and duties of municipal corporations are of two-fold character; the one public as regards the state at large, insofar as they are its agents in government; the other private insofar as they provide the local necessities and conveniences for their own citizens. * * * [I]n the exercise of the former the corporation is a municipal government, and * * * in the exercise of the latter * * * a corporate legal individual."
Similarly, Doddridge, "Distinction Between Governmental and Proprietary Functions of Municipal Corporations," 23 Mich. L. Rev. 325, 333 (1925), in dealing with municipal tort liability, states the general theory as being that a *180 municipal corporation has a dual function, one exercised as a mere agent of the state in the process of government, the other private in nature in that it is exercised for the particular benefit of the corporation and its inhabitants, as distinguished from those things in which the whole state has an interest.
"* * * If acting in its governmental capacity, the municipality is not liable in tort for either a nonfeasance or a misfeasance, because in so acting it is but the agent of the State and is so far a part of the State that it partakes of the sovereignty of the State in respect to immunity from suit. * * * But, if the municipality is acting in its proprietary capacity, for the particular benefit of the inhabitants of the locality, it is not acting as an agent of the State but is merely exercising a privilege granted by the State and therefore does not partake of the immunity of the State."
See, also, Borchard, "Government Liability in Tort," 34 Yale L.J. 1, 129, 229 (1924), and 36 Yale L.J. 1, 757, 1039 (1926), as well as 28 Col. L. Rev. 577, 734 (1928); Harno, "Tort Immunity of Municipal Corporations," 4 Ill. L.Q. 28 (1921); Fuller and Casner, "Municipal Tort Liability in Operation," 54 Harv. L. Rev. 437 (1941); Repko, "American Legal Commentary on the Doctrines of Municipal Tort Liability," 9 Law and Contemporary Problems 214 (1942); Antieau, "The Tort Liability of American Municipalities," 40 Ky. L.J. 131 (1952).
This extended reference to nonjudicial but authoritative analysis of the problem before us leads us to the conclusion that the operation of swimming pools like Newark's must be considered as a proprietary function under the existing artificial distinction which separates municipal immunity from municipal liability. The operation of a swimming pool is an activity which a municipality provides for its citizens more as a matter of local convenience than in the exercise of some duty discharged on behalf of the State with consequent benefits accruing to the State as a whole. It is a service which could just as well be provided by a private corporation, and very often is.
*181 We are not unaware of a statute which seems to have escaped the research of both sides, but of which we nonetheless take judicial notice  L. 1957, c. 166 (N.J.S.A. 40:61-22.21). Section 1 of that statute provides:
"The governing body of any municipality may acquire, maintain, operate and regulate 1 or more public swimming pools and such other recreational, playground, or public entertainment activities as it may determine to provide in connection therewith, and for any such purpose or purposes may construct, reconstruct, alter, provide, renew and maintain such buildings or other structures and equipment as it may determine, and provide for the care, custody and control thereof."
Section 5 authorizes the governing body to appropriate money annually, to be raised by taxation, to develop, maintain and operate these facilities. Section 6 permits it to "establish, charge, and collect reasonable fees, rents or other charges for admission to, use or enjoyment of any property now or hereafter developed or used in whole or in part for a public swimming pool."
The statute is permissive, adding to the broad range of activities which a municipality may undertake in meeting the needs and desires of its residents. The fact that the statute authorizes municipal swimming pools does not thereby transmute that activity into a governmental function. Compare the discussion in Cloyes v. Delaware Tp., above, 23 N.J., at pages 332-3 and 335, regarding sewage disposal plants. Paraphrasing what Justice Weintraub said there, a swimming pool "is not within the imperative public duties imposed on a municipality as agent of the State * * *."
We deem our conclusion that Newark's ownership and operation of the Hayes Park West Pool is a proprietary activity to be in accord with the trend toward restricting municipal immunity which runs through modern legal literature and through our recent appellate decisions, particularly the Cloyes case, above. Our Supreme Court there recognized that in recent times municipalities and other governmental agencies have expanded into many new areas, either replacing *182 private enterprise or satisfying new needs which theretofore had not required public activity. This expansion in the area of governmental activity has quite naturally been attended by an increasing number of private injuries resulting from municipal tortious conduct which, under the older decisions, would go without remedy. The availability of liability insurance has increased confidence in the ability of local government to carry on without special immunity. Concepts of fair play and justice have changed. Accordingly, courts have had to make new evaluations in the light of the common sense of the situation, and have increasingly declined to extend the concept of governmental immunity to the new and growing areas of activity. (23 N.J., at pages 328-9) The Cloyes court concluded that the operation of the sewage disposal system there in question was a proprietary function for the reasons that (1) "Sewage disposal is not one of the public services anciently furnished by local government. Nor is it uniformly so furnished today." (2) The statutes do not impose a duty on municipalities to install a sewage system, but merely authorize installation of sanitary sewers and disposal plants; and (3) "there are many resemblances between [sewage disposal] service when rendered on the basis of a charge to the consumer and the supply of water by a municipality which, it is settled, constitutes a proprietary function." (at pages 332-3 of 23 N.J.).
We hesitate to advance the reason that a swimming pool is not a public service "anciently furnished by local government" as a basis for our decision to hold such an operation proprietary. Public baths were common in Greece after the Periclean Age, and were universally patronized by the Romans, as witness the abundant remains of the thermae which survive in Pompeii and chiefly in Rome (the Baths of Titus, Caracalla and Diocletian). There were baths in Trier, Germany, in Leptis Magna, Africa, in Bath, England, and in Syria, Turkey and Persia. Public baths were common in Europe in medieval times, as are municipal swimming establishments in our day, in Dresden, Hanover, Munich, *183 Budapest. See 3 Encyclopedia Brittanica, Baths, p. 204 et seq. (1906), passim. But public bathing establishments and swimming pools are, in the historical nature of things, of relatively recent origin in America.
We would rather rest our conclusion on the basis of what has already been said. It is not unreasonable so to construe the statute here in question as to hold a municipality for negligence in the maintenance of a building devoted to the performance of a function voluntarily assumed under its general powers or by permissive legislation, or where it performs a service which could be provided as well (and often is) by a private corporation, or where the function is allocated to the municipality for its profit or special advantage, rather than for the purpose of carrying out the public functions of the state without special advantage to the city.
The judgment is affirmed.