68 N.J. Super. 38 (1961)
171 A.2d 361
DORIS CARLSEN STRINGFIELD, PLAINTIFF-RESPONDENT,
v.
THE CITY OF HACKENSACK, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1961.
Decided May 26, 1961.
*39 Before Judges CONFORD, FBEUND and KILKENNY.
Mr. William R. Morrison argued the cause for defendant-appellant (Messrs. Morrison, Lloyd & Griggs, attorneys).
Mr. Harry Chashin argued the cause for plaintiff-respondent (Messrs. Marcus & Levy, attorneys; Mr. Chashin, of counsel).
The opinion of the court was delivered by FREUND, J.A.D.
This appeal by the City of Hackensack projects the issue of whether a municipally-owned, metered *40 parking lot is a "governmental" or "proprietary" function for purposes of tort liability.
Plaintiff suffered a fractured hip and other painful injuries when she slipped and fell on the ice-covered lot. The accident occurred on January 18, 1958; five inches of snow had recently fallen in the area, followed by rain, sleet and sub-freezing temperatures. Plaintiff had driven to Hackensack with her mother in order to do some shopping. She had turned off State Street into the city-owned and operated lot adjoining the rear of several retail stores, whose front entrances were located on Main Street, the principal shopping area of the city. She parked in front of a meter, emerged from the car, and as she proceeded to walk behind the vehicle she slipped and fell.
Suit was instituted in the Bergen County Court, charging the city with negligence in maintaining the lot in a dangerous and unsafe condition. The municipality countered with assertions of contributory negligence and assumption of risk; in addition, the city claimed that, as a municipal corporation, it was "immune from liability under the facts of this case." At trial, defendant moved for dismissal at the close of plaintiff's proofs on the ground (among others) of municipal immunity; the court denied the motion, concluding that the ownership and operation of the parking lot was a proprietary activity. An identical motion at the close of all the evidence was likewise rejected by the trial judge, who proceeded to charge the jury in terms of ordinary negligence. The jurors returned a verdict in plaintiff's favor in the amount of $10,000, upon which the judgment here under review was entered. The city does not contest on this appeal the sufficiency of the evidence to support the jury's conclusions with respect to negligence, contributory negligence, and assumption of risk.
Hackensack's sole position on this appeal is that the question of whether municipal parking facilities constitute a "governmental" function has already been resolved in the affirmative by the Supreme Court in Camden Plaza Parking *41 v. City of Camden, 16 N.J. 150 (1954). The issue in Camden Plaza was whether a city could lease municipally-owned lands to a private corporation for the construction and operation of an off-street public parking structure. The court held that there was no statutory authority to so lease in the absence of a parking authority under N.J.S.A. 40:11A-1 et seq., and, since Camden had not created such an authority, the attempted arrangement was illegal and void. Prior to reaching the crux of the litigation, Justice Brennan discussed (16 N.J., at p. 154), in general terms, the power of a municipality to establish public parking facilities:
"Action by a municipality to relieve traffic congestion through the establishment of off-street public parking facilities is the exercise of a public and essential governmental function, and publicly-owned lands used for such purposes are devoted to a public use. The parking crisis in the modern day threatens the very welfare of the community, and statutes and court decisions recognize that public lands employed by public bodies for public off-street parking are devoted to a public purpose. R.S. 40:60-25.1, R.S. 40:56-1.1, R.S. 40:11A-1; * * *."
We do not consider Camden Plaza dispositive of the issue here confronting us. The language relied upon is essentially repetitive of the court's prior exposition in De Lorenzo v. City of Hackensack, 9 N.J. 379, 384-85 (1952), declaring the municipal maintenance of off-street parking facilities, designed to meet the problem of traffic congestion, to be a proper public purpose within statutory and constitutional limitations. This is of course a sound proposition which is no longer open to serious doubt. Cf. City of Trenton v. Lenzner, 16 N.J. 465, 471 (1954). See cases collected in Annotation, 8 A.L.R.2d 373, 375-78 (1949), and supplement thereto.
But to hold that a particular function undertaken by a governmental authority is properly in furtherance of a public  as opposed to a private  objective, for the purpose of expenditure of public funds, is not the equivalent *42 of stamping the activity as "governmental" for purposes of tort liability. The legislative powers of our municipalities must, unless otherwise authorized by the Legislature (subject to constitutional restrictions), be limited to those activities which contribute in some discernible fashion to the preservation and promotion of the public health, safety or welfare. N.J. Good Humor, Inc. v. Bradley Beach, 124 N.J.L. 162 (E. & A. 1940); Hart v. Teaneck Township, 135 N.J.L. 174, 176 (E. & A. 1947); 2 McQuillin, Municipal Corporations, § 10.31, p. 647. See R.S. 40:48-1, 48-2. Thus, to construe an activity as "governmental" in the sense that its purpose is consonant with the aims and objectives of governmental activity in a democracy, is not to resolve the question of the municipality's immunity in tort while engaging in that operation. This was succinctly pointed out in Weeks v. Newark, 62 N.J. Super. 166, 177 (App. Div. 1960), affirmed o.b., 34 N.J. 250 (1961):
"That the * * * [undertaking in question] is in the interest of public health or welfare is * * * not a valid test [for purposes of determining tort liability]. Nearly all municipal activities will serve the health, comfort, safety or convenience of the inhabitants, and thus could lay claim to classification as governmental."
As an example of the necessary divisibility of the two concepts, it is settled that a constitutional assault on the "public" objective of a statute providing for the development of parking facilities will not succeed merely because the municipality is engaged in what heretofore may have been regarded as a private enterprise. McSorley v. Fitzgerald, 359 Pa. 264, 59 A.2d 142, 145 (Sup. Ct. 1948); Barnes v. City of New Haven, 140 Conn. 8, 98 A.2d 523, 529 (Sup. Ct. Err. 1953). Yet, as developed, infra, a significant factor in determining the "governmental" or "proprietary" character of an activity for purposes of tort liability is its historical development as an essentially public or private operation.
*43 It must also be recognized that the policy goals underlying the two doctrines are substantially divergent, tending to encourage a difference in constructional approach. On the one hand, every intendment is in favor of the validity of municipal legislation, thereby drawing in the direction of a finding of the "public" or "governmental" nature of the undertaking. 2 McQuillin, supra, at p. 648. On the other hand, the understandable judicial reluctance to deprive, under modern-day conditions, an injured party of recovery for personal injuries on the sole basis of sovereign immunity has led to a whittling down of the immunity, in part by means of "a more lenient attitude toward the proprietary classification." Schwartz v. Stockton, 32 N.J. 141, 147 (1960).
The court in Weeks v. Newark, supra (62 N.J. Super., at p. 174), construed the immunity provision of R.S. 40:9-2 as not insulating the municipality from liability for injury resulting from the use of those public buildings, structures or grounds which are devoted to a proprietary function. Since the Weeks case also held that injuries upon municipal buildings, structures or grounds devoted to a governmental function will not, under the statute, visit liability either upon the basis of simple negligence or active wrongdoing, we need not consider the character of the city's neglect herein. Compare Kuchler v. New Jersey & N.Y.R.R. Co., 104 N.J.L. 333 (E. & A. 1928) with Kelly v. Curtiss, 29 N.J. Super. 291 (App. Div. 1954), reversed on other grounds 16 N.J. 265 (1954); see Hayden v. Curley, 34 N.J. 420 (1961). Our inquiry is therefore narrowed to defining the nature of Hackensack's operation of the parking lot.
The governmental-proprietary distinction has been repeatedly and solidly attacked by courts and commentators alike, see Marshall v. Town of Brattleboro, 121 Vt. 417, 160 A.2d 762 (Sup. Ct. 1960); see 2 Harper and James, The Law of Torts, (1956), § 29.6, p. 1619; Prosser, Torts (2d ed. 1955), § 109, p. 774; Seasongood, "Municipal *44 Corporations: Objections to the Governmental or Proprietary Test," 22 Val. L. Rev. 910 (1936), with our own tribunals not the least vociferous. See Cloyes v. Delaware Tp., 41 N.J. Super. 27, 36 (App. Div. 1956), affirmed 23 N.J. 324, 327-32 (1957); Weeks v. Newark, supra. The historical basis for the distinction is shown to have been confused, see 2 Harper and James, supra, at p. 1620, the policy reasons for maintaining the dichotomy are markedly non-existent, see Prosser, ibid., collecting commentaries, at n. 42, and the test for deciphering and categorizing a particular function has been unanimously labeled as unsatisfactory. See 2 Harper and James, supra, at p. 1621; 18 McQuillin, supra, §§ 53.29-53.32, pp. 210-222. Nevertheless, like a cork on the waves, the distinction bobs up and is with us again. Little can be added to the latest judicial efforts to articulate the prevailing separative formulae. See Cloyes v. Delaware Tp., supra, and Weeks v. Newark, supra. Bearing on the "governmental" nature of an activity or service is the fact that it was historically engaged in by local government; that it is uniformly so furnished today; that it could not be performed as well by a private corporation; that it is not undertaken for profit or for revenue (but see Union City Housing Authority v. Commonwealth Trust Co., 25 N.J. 330, 341 (1957), as to the diminishing importance of this factor); and, most significantly, that it is not "within the imperative public duties imposed on a municipality as agent of the State * * *." Cloyes v. Delaware Tp., supra (23 N.J., at p. 333). See 63 C.J.S. Municipal Corporations § 747, p. 34; 38 Am. Jur., Municipal Corporations, §§ 572-74, pp. 261-69.
Municipalities are empowered by statute to furnish public parking facilities in either of two ways. They may create a parking authority under the sanction of N.J.S.A. 40:11A-1 et seq., or they may acquire and lease land, or lease land from a private party, for parking facilities under N.J.S.A. 40:60-25.1 et seq. Both of these statutes are permissive in form, thus indicating that the activity sanctioned *45 is not one of mandatory imposition upon the people of the State as a whole but rather is offered to individual communities beset by unusual problems of traffic congestion. The activity is surely not historically significant as a local government function, as both common knowledge of the evolution of vehicular traffic and the dearth of reported cases on the present subject will attest. See Ehrsam v. Borgen, 185 Kan. 776, 347 P.2d 260, 263-64 (Sup. Ct. 1959). While the needs of the local business community and the problems engendered by blossoming population centers may well dictate the expansion of parking facilities under municipal guidance in certain communities, and may some day necessitate governmental action on a broader and more imperative scale, at the present stage in history this clearly is not a function ordinarily and naturally attributed to government. To paraphrase the court's language in Weeks v. Newark, supra (62 N.J. Super., at p. 180), the operation of a parking lot "is an activity which a municipality provides for its citizens more as a matter of local convenience than in the exercise of some duty discharged on behalf of the State with consequent benefits accruing to the State as a whole. It is a service which could just as well be provided by a private corporation, and very often is."
What meager case law exists bolsters our conclusion that the activity under review is proprietary for tort purposes. Nary v. Dover Parking Authority, 58 N.J. Super. 222 (App. Div. 1959), involved personal injuries to an automobile passenger while walking through a parking lot operated by the Parking Authority of the Township of Dover under the aforementioned statutory authorization. We there held that the question of defendant's negligence was for the jury to determine, on principles of ordinary negligence. No contention was made to the effect that the Authority was engaged in a governmental function and was therefore immune from liability. Cutnaw v. Columbus, 107 Ohio App. 413, 157 N.E.2d 373 (Ct. App. 1958), held that the operation of a parking garage by a municipality is a proprietary *46 function and that the city is liable in negligence for the improper maintenance of that facility. Also see Automobile Underwriters, Inc. v. Pittsburgh, 44 Pa. D. & C.R. 63, 90 Pittsb. Leg. J. 107 (C.P. 1942). Cf. Town of East-chester v. Koch, 203 Misc. 328, 118 N.Y.S.2d 576 (Sup. Ct. 1952); Britt v. City of Wilmington, 236 N.C. 446, 73 S.E.2d 289 (Sup. Ct. 1952).
Defendant urges N.J.S.A. 40:60-25.5 in support of its alleged immunity. However, by express proviso this section retains liability for negligence on the part of the municipality's agents, servants or employees in the operation or maintenance of a public parking area, and therefore has no application to the facts herein.
Affirmed.