Williams, J.
 

 The right of private property is guaranteed and protected by the fundamental law of the state and nation. The state and federal Constitutions provide that no person shall be deprived of his property without due process or due course of law. The Ohio Constitution further provides that private property shall ever be held inviolate but subservient to the public welfare, and classes among the inalienable rights of man those of acquiring, possessing and protecting property.
 

 Private property is subject to three rights of government: (1) The right of
 
 eminent domain,
 
 (2) the right of police power, and (3) the right of taxation. The first relates to the taking of property for public use for which compensation must be made. As to the second it may be said that the exercise of the police power justifies municipal action only when it relates to the public weal or general welfare, and can never be the basis for municipal authority to engage in private, competitive business, that is, business which does not involve the element of public utility. As to the third right, that of taxation, we are directly concerned in this ease, because only through taxation to redeem bonds or defray expenses can any municipal corporation be carried on and its functions fulfilled.
 

 It is basic in constitutional law that taxes can only be levied and collected for a public purpose.
 
 Auditor of Lucas County
 
 v.
 
 State, ex rel. Boyles,
 
 75 Ohio St., 114, 134, 78 N. E., 955, 7 L. R. A. (N. S.), 1196;
 
 Loan Association
 
 v.
 
 Topeha,
 
 87 U. S., 655, 22 L. Ed., 455; 1 Cooley on Taxation (4 Ed.), 381, Section 174; 26
 
 *470
 
 Ruling Case Law, 41, Section 26; 38 Ohio Jurisprudence, 758; 61 Corpus Juris, 88, Section 18.
 

 The authorities differ to some extent as to what constitutional provisions give rise to the principle of a required public purpose in taxation, but the rational foundation of the doctrine is that any other legal theory would not be consonant with free government, that is, a government based upon the public will and not on force, and that the right to tax is conditioned upon its being for a public purpose, and is the very heart of the representative form of government guaranteed to each state by the federal Constitution. Some authorities hold that taxation for other than public purposes is taking property without due process of law, within the meaning of the Fourteenth Amendment to the federal Constitution.
 
 Green
 
 v.
 
 Frazier, Governor,
 
 253 U. S., 233, 64 L. Ed., 878, 40 S. Ct., 499;
 
 Fallbrook Irrigation Dist.
 
 v.
 
 Bradley,
 
 164 U. S., 112, 41 L. Ed., 369, 17 S. Ct., 56.
 

 It has also been held that taxation for a private purpose is prohibited by the clause of the federal Constitution that guarantees to every state a republican form of government, as such a form of government forbids the raising of taxes for anything but a public purpose.
 
 Beach
 
 v.
 
 Bradstreet, Comptroller,
 
 85 Conn., 344, 82 A., 1030, Ann. Cas. 1913B., 946.
 

 The right of local self-government and local police power is conferred on municipalities by the state Constitution. Article XVIII, Sections 3 and 7, Constitution. Municipal corporations have the right to acquire, construct, own, lease and operate any public utility. Article XVIII, Section 4,
 
 et seq.,
 
 Constitution. No attempt, however, has been made to confer power upon public corporations in this state to enter into private, competitive business.
 

 In
 
 State, ex rel. City of Toledo,
 
 v.
 
 Lynch, Auditor,
 
 88 Ohio St., 71, 102 N. E., 670, 48 L. R. A. (N. S.), 720,
 
 *471
 
 Ann. Cas. 1914D., 949, the court, in passing upon the right of a charter or home rule city, such as Cleveland, to engage in private business by operating a moving-picture theater, laid down the following principle: “Whether a municipality acquires authority ‘to exercise all the powers of local self-government' by adopting a charter, or adopts a charter as an indispensable mode of exercising the authority, the powers to be exercised, being governmental, do not authorize taxation to establish and maintain moving-picture theaters.”
 

 In the opinion at page 96 it is stated: “How little would remain of the assurance which the Bill of Bights gives to minorities as well as to majorities that: ‘All men * * * have certain inalienable rights, among which are those of * * * acquiring, possessing and protecting property,’ and that private property may be taken only for uses which are public, if the proceeds of industry and thrift may be seized for the establishment and operation of moving-picture shows and all other imaginable purposes not more frivolous nor more remote from the functions of government.”
 

 In the case of
 
 Opinion of the
 
 Justices, 182 Mass., 605, 66 N. E., 25, 60 L. R. A., 592, the rule is stated to our approval in this language: “There may be some now who believe it would be well if business was conducted by the people collectively, living as a community, and represented by the government in the management of ordinary industrial affairs. But nobody contends that such a system is possible under our Constitution. It is plain, however, that taxation of the people to establish a city or town in the proprietorship of an ordinary mercantile or manufacturing business would be a long step towards it. If men of property, owning coal and wood yards should be compelled to pay taxes for the establishment of a rival coal yard by a city or town, to furnish fuel at cost, they would thus
 
 *472
 
 be forced to make contributions of money for their own impoverishment; for if the coal yard of the city or town was conducted economically, they would be driven out of business.”
 

 The right of private property must be protected against careless adjudication which, step by step, may wear it away. If a public municipal building may be used by the municipality to carry on private business of one kind, there is no reason why the municipal authorities may not embark in other fields of private enterprise. The only legitimate way such an end may be accomplished is by a change in constitutional limitations.
 

 If taxes may be levied and raised for a private purpose, the whole people may be taxed for the benefit of a few or of a class.
 
 Board of Education
 
 v.
 
 State, ex rel. Lindsay,
 
 51 Ohio St., 531, 38 N. E., 614, 46 Am. St. Rep., 588, 25 L. R. A., 770. Necessity of a public end or aim in taxation is the very basis and foundation of our free institutions.
 

 It follows naturally that, in order for a municipality to employ taxes to carry on a competitive business, such business must involve a public function or be concerned with some element of public utility.
 

 In the instant case the municipal legislation for acquiring the land and erecting the underground structure expressly provides that the purpose is to be a public one, and that the space is to be used for “storage, garage or other public purpose, and for all uses incidental thereto.” Manifestly had the express purpose been to maintain and operate a private competitive garage the proposal would have been extralegal from the beginning. To engage in private, competitive business is to go beyond the purpose for which the underground exhibition hall was constructed, as expressed in the legislation therefor.
 

 It is true that in many instances, it has been held
 
 *473
 
 that public buildings may be temporarily let for a consideration, but in our judgment the present case does not present a situation of that character. Here we are concerned not with a temporary leasing of a public building, but with one which is used at times for purely public functions and at other times, and by far the larger part of the time, for engaging in a private garage business in direct competition with privately owned and operated garages in the vicinity, including that which plaintiff below operated as receiver.
 

 Thus the owner and operator of a private garage is taxed to carry on the garage business of a municipality in direct competition with himself. In this aspect of the case it matters not whether the municipal garage is or is not operated for profit. - The impression that a business carried on by government, municipal or otherwise, is always profitable, has found lodgment in some minds. This fallacious attitude of mind fails to take note of the fact that the vicissitudes of business enterprises are always present, regardless of the private or public character of the management. In the operation of the garage business, taxation must be employed to pay the expense of maintaining and repairing the building, to pay damages resulting from the operation, to meet contingencies of loss and expense of whatever kind, whether by fire, tornado, or explosion, or by any failure of business acumen in conducting the business or from competition which might curtail it. In the instant case, for a period of several months, the garage was operated at a loss of seven hundred to one thousand dollars per month, while there was at no time a profit from operating it.
 

 The application of these principles to the instant case leads inevitably to the holding that the building may be operated as a garage so far as in doing .so there is involved a public function. The decree of the Court of Appeals is therefore too broad and must be
 
 *474
 
 modified. To be specific, whenever the public buildings of entertainment located in the civic center, to wit, the underground exhibition hall itself, the public hall, or the stadium are used properly and lawfully for public gatherings, patrons in attendance thereat may use the underground exhibition hall for parking or storing automobiles, for hire or otherwise. The city may permit its officers and employees to park or store their automobiles in the underground exhibition hall while they are engaged in the performance of duties as such officers and employees, but subject to the terms prescribed by the city. The city of Cleveland may use the premises for the parking, storing, washing, oiling, lubricating, repairing and otherwise servicing its own automobiles, trucks, busses, and other vehicles. Should any purely public purpose for which the building may be used arise in the future, such a use is not prohibited.
 

 On the other hand the defendants in the court below are enjoined from operating the garage as a purely private business in competition with privately owned garages.
 

 The judgment of the Court of Appeals will be modified accordingly, as of the date of the entry of judgment therein, and as modified will be affirmed.
 

 Judgment modified and affirmed as modified.
 

 Weygandt, C. J., Stephenson, Jones and Matthias, JJ., concur.
 

 Zimmerman, J., concurs in the judgment.