Fred HAYDEN, Appellant,

v.

CITY OF HOUSTON et al., Appellees.

No. 15821.

Court of Civil Appeals of Texas.

Fort Worth.

June 14, 1957.

Rehearing Denied July 12, 1957.

Second Motion for Rehearing Denied Sept. 20, 1957.

Further Rehearing Denied Oct. 18, 1957.

Hofheinz, Sears, James & Burns and Robert L. Burns, Houston, for appellant.

Geo. D. Neal, City Atty., and Homer T. Bouldin, Asst. City Atty., Houston, for appellee City of Houston.

No appearance for other appellees.

MASSEY, Chief Justice.

The City of Houston is possessed of certain parcels of real estate operated as automobile parking lots. One of the parcels operated for such purposes is adjacent to the municipal airport. It will be termed as the "Airport Lot".

As a means of operating these various lots, including the Airport Lot, the City has for some years resorted to a form of independent contract with firms or individuals who actually operate parking lot businesses. Pursuant to such plan of operation, the City periodically calls for bids on the basis of individual lots, the compensation to be on the basis of percentage of income a bidder offers the City as to each individual lot bid on.

For example, in years previous to the time giving rise to the controversy presented to us, the highest bidder on the Airport Lot had been Fred Hayden, plaintiff in the trial court and the appellant here. He had operated this lot in the manner of an individual who owns or leases such type premises, paying the City of Houston 73% of the gross receipts from his parking patrons. The gross receipts on the lot operation were not varying greatly from a $5,000 per month average just before Mr. Hayden's contract period expired.

Pursuant to public advertisement the City Council of the City of Houston received sealed bids on its parking lots, including the Airport Lot, and Peter G. Dervas and Sam F. Bellesiotis submitted a bid of 80% of the gross receipts on said lot. Hayden submitted a bid of 79%. Dervas and Bellesiotis obtained the contract. By instrument executed pursuant to ordinance directing such, the City contracted with Dervas and Bellesiotis, by way of an instrument denominated "Lease", for the period October 1, 1956, to September 30, 1958, inclusive. The premises were merely described as "the parking area at or to the north of the City's new Administration and Terminal Building at the City's Municipal Airport". Dervas and Bellesiotis agreed to use said premises "solely for the purpose of operating thereupon of motor vehicle parking lots in substantially the manner in which such parking lots are at this time being operated for general public parking through the downtown Houston area". Further provisions included the following: "No other use shall be made by Lessee or permitted by Lessee to be made of the demised premises than the use and purpose just stated".

The "Lease" provided further, as follows: "The City reserves the right, however, from time to time to change the designations as between areas designated for free parking, areas designated for metered parking and areas to be operated by the Lessee under this lease; but if by change in such designations there is a material reduction in the area covered by this lease, or the area covered by this lease becomes divided into two separate parts thereby increasing the necessary number of attendants, the Lessee shall have the option upon thirty (30) days' notice to the City of terminating this lease. The Lessee * * * must

so operate it that there are both east and west openings for easier access to and departure from the parking lot." It is to be noted that the area covered by the instrument was most general and indefinite, but the lease further provided with reference thereto: "There are excluded from this lease, however, those portions of such parking area as are designated for metered parking and those portions * * * as are designated for free parking."

On the matter of parking rates that the "Lessee" should charge, the following appears: "Unless otherwise authorized or required by the City, Lessee will observe the same schedule of parking charges as the schedule in effect on the date of the commencement by the City of advertisement for bids looking to the making of this lease. Any changes in such schedule which Lessee desires to put into effect shall be subject to prior approval by the City Council, and the City Council may, on the other hand, require increases therein * * *."

At the time the foregoing transaction was consummated between the City of Houston and Dervas and Bellesiotis, there was in effect as a part of the City charter a provision setting limitations on the powers of the City to lease its real estate. The material part thereof as applied to this case was the provision that "in all sales or leases in which the price or money rental is in excess of Five Thousand ($5,000.00) Dollars the property shall be first appraised by two qualified appraisers appointed by the Council, their report in writing to be filed with the Council for its consideration." It was made plain by further language that the City Council should not have the power to lease such property except in compliance with the provision. Section 1, Article IX of the charter of the City of Houston provides that "Any citizen who is a property taxpayer of the City of Houston may maintain an action in the proper court to restrain the execution of any illegal, unauthorized or fraudulent contract or agreement on behalf of said city."

Hayden was most unhappy that he did not obtain the "Lease" on the Airport Lot for the period in question, and he decided to proceed as a "citizen who is a property taxpayer" to seek an injunction prohibiting the City and Dervas and Bellesiotis from executing or attempting to execute the terms of the foregoing contract, and to have the same declared null and void.

Upon hearing and considering the petition for temporary injunction the trial court denied the relief prayed for. Plaintiff Hayden has perfected an appeal.

 Hayden correctly points out that while ordinarily an appeal from an order granting or denying an interlocutory injunction is to be determined on the proper exercise by the trial court of judicial discretion, however, when the situation is such that by an application of the law to the undisputed and uncontradicted facts the plaintiff's right or lack of right to temporary relief is apparent, the matter of relief may be considered as though the appeal was presented after a hearing on the merits. In the present instance such is the case.

 We are of the opinion that Hayden's suit must fail because he is in error in believing that the contract denominated as a "Lease" is in fact a lease of the City's real estate. Its character is to be determined as a matter of law. In our opinion the instrument is no more than a license or franchise with reference to a certain use of the City's real estate, and directed to a means of having the Airport Lot adjacent to the publicly visited municipal airport operated for a desired public purpose by an independent contractor rather than by the City.

 In the case of City of Cleveland v. Ruple, 1936, 130 Ohio St. 465, 200 N.E. 507, 103 A.L.R. 853, a distinction was made between municipal provision of off-street parking facilities for the general public and municipal provision for parking facilities as a convenience for that portion of the

public desiring to visit a municipal building or establishment, such as a city hall, police station, or municipal hospital or auditorium. The annotations in 8 A.L.R.2d 374, et seq., deal primarily with the power of a municipality to establish, maintain, or operate off-street parking facilities, and supersedes the annotation in 103 A.L.R. 860, entitled "Power of municipality to establish or conduct public garage or parking station." Our interpretation of the weight of authority is that where no constitutional, statutory, or charter provision expressly authorizes municipalities to engage in off-street parking activity (and in the instant case there was none), its attempt to do so ordinarily constitutes an undue interference with the constitutional right of private property in view of attendant entry into private enterprise in a competitive field. However, when the situation is such as existed in the case of City of Cleveland v. Ruple, supra, and the facility is to provide a convenience for that portion of the public desiring to visit a municipal establishment, the municipality is entitled to operate the same or see that it is operated for such a purpose and for all uses incidental thereto. The uses would be public and not private and prohibited. That which is a public use changes with changing conditions of society, new appliances in the sciences, and other changes brought about by an increase in population and by new modes of transportation and communication. We are of the opinion that municipal airports constructed with public funds for the development of public transportation via air would differ in no material essential from a public auditorium, municipal hospital, or other public facility.

Without consideration of whether the same thing would apply to other parking lots "leased" by the City, we have no doubt that it could have operated the Airport Lot with its own personnel had it desired, the operation amounting to a public action.

■ It being within the authority of the City to operate the lot, it was a matter with-

in its discretion as to the means whereby such a purpose might be accomplished. The means adopted in the present instance did not constitute any alienation of the property within the meaning and provision of its charter, and it did not pass any estate in the land, as essential to contracts of lease or sale. If the City had no authority to make a lease on the property in question, than it logically follows that it could not make a valid lease. It appears from the face of the instrument that the agreement made did not confer exclusive possession of the premises as a whole, or any particular portion thereof, as against the whole world, including the City itself, and under such circumstances the instrument would be construable as a license rather than a lease in any choice to be made between the two. 51 C.J.S. Landlord and Tenant § 202, sub. e(2), p. 806. The grant made by the City being for a public purpose not materially different from the operation of a public utility or a toll road for which a charge is to be made for its service or use partakes of the nature of a franchise if indeed it is not such. This is a matter we need not decide for the limit of our need of determination is the want of characteristices in the instrument entitling it to the dignity of a lease of real estate. But as in the case of a license, a franchise is neither land nor an interest in land as is essential to a contract of lease, notwithstanding the use thereof may require the occupancy of real estate. 37 C.J.S. Franchises § 8, sub. a(2), p. 152.

Since it is to be noticed from the instrument in question that the City did not define any particular property in such manner as would enable Dervas and Bellesiotis to mark off any particular parcel of land and did not purport to grant them any exclusive rights against the whole world or the City itself in any specifically described property, we believe that it necessarily follows that they did not receive any lease of any part of the City's real estate as contemplated by the provisions of the charter. Additionally, it is to be noticed from the instrument that the City was privileged

to change the area in question and designate sections therein for free parking or metered parking, deleting such a section from the area where the so-called "lessees" could place or park automobiles for a fee or charge. Such "lessees" were not privileged to select their own patrons but were obliged to serve the public at large. They could not set the rate or fee they might prefer to charge a parking patron, but were compelled to accept the decision of the City Council as to such charges, though the latter was privileged to raise or lower them at its discretion.

Since the character of the transaction between the City and Dervas and Bellesiotis was not a contract of lease as contemplated by the charter, we are convinced that the trial court correctly determined that there was no entitlement on the part of Hayden to the relief sought. In so holding we find it unnecessary to give any consideration to any question about whether Hayden's status as a petitioner for relief was properly that of a person given the right to seek such by the provisions of the charter.

Under the circumstances, we are of the opinion that we need not lengthen this opinion in a discussion of equitable status and rights under an assumption that the transaction was in fact one of lease, nor to whether equitable relief which might have issued under such an assumption should or should not have been granted under equitable principles. Any such question would be moot in view of our holding as above.

The judgment is affirmed.

### On Motion for Rehearing

On motion for rehearing plaintiff-appellant Hayden states that our reliance on the case of City of Cleveland v. Ruple, 1936, 130 Ohio St. 465, 200 N.E. 507, 103 A.L.R. 853, for the holding that a city does not have authority to operate a public parking facility is misplaced. He points out Texas cases sustaining the right of certain cities to operate off-street public parking facili-

ties, as follows: Zachry v. City of San Antonio, Tex.Civ.App., San Antonio, 1956, 296 S.W.2d 299, affirmed by Supreme Court on June 5, 1957, 305 S.W.2d 558; Amstater v. Andreas, Tex.Civ.App., El Paso, 1954, 273 S.W.2d 95, writ ref., n. r. e.

■ The foregoing cases dealt with the powers of Home Rule cities. We may take judicial notice of the fact that the City of Houston is such a city through the records in the office of the Secretary of State showing its incorporation. See V.A.T.S. Title 28, "Cities, Towns and Villages", Ch. 13, "Home Rule", Art. 1173, "Certification".

■ It is to be noted from the cases to which we are referred that the City of Houston (as a Home Rule city) may exercise only such powers as are expressly granted in its charter or such implied powers as are incident thereto or are essential and necessary to make effective the objects and purposes of the corporation. Conceding that off-street parking facilities of Texas municipalities are public improvements as established in such cases, it is to be noted also that any power to supply them must be by provisions of charter. We cannot take judicial notice of the provisions of the charter of the City of Houston generally, but only of such parts thereof which were placed in evidence. Only thereby was the trial court bound—and this court bound on appeal. If the City of Houston has such authority by provision of its charter we do not know it. We find no evidence in the record that it does have. Nor is the state of the evidence such that the authority would be implied.

The motion for rehearing is overruled.

### On Second Motion for Rehearing

On appellant's second motion for rehearing, the opinion of this Court on his first motion for rehearing is attacked because we therein stated "We cannot take judicial notice of the provisions of the charter of the City of Houston generally, but only of

such parts thereof which were placed in evidence."

◼ Appellant refers us to Article 1174 of Vernon's Annotated Revised Civil Statutes, which is applicable to "home rule" cities and provides that courts shall be required to take judicial notice of provisions of a city charter as a public act when the same or any amendment thereof shall have been recorded at length upon the records of the city, in a separate book kept for that purpose in the office of the city secretary (or other officer exercising like or similar powers), following the adoption and approval thereof pursuant to the provisions of law. Appellant attaches to his motion a bound volume entitled "Charter of the City of Houston," shown on its cover to have been published by authority of its City Council. In the volume there are provisions relative to ordinances granting a franchise or any right to use "property of the City of Houston, * * * and all other public places and property", providing generally that any such must be read in full at three regular meetings of the Council. The objective of appellant is to show us that in the event the transaction entered into between the City of Houston and Messrs. Dervas and Bellesiotis is to be termed a franchise or license, it was violative of the provisions of the charter just as it was contended to be under the theory that it amounted to a lease of the City's real estate.

We are of the opinion that we have reached the correct result in our original opinion. The record does not show that the charter's provisions have been recorded in the manner prescribed by the article and provided as a prerequisite to judicial notice. This court could perhaps embark upon an independent course of inquiry in the matter in the determination of the question, but we are not obliged so to do. In the trial court the appellant couched his case upon the theory that the transaction was a lease of the City's real estate. The trial court had notice upon the trial of the provisions of the charter relative to leases of real estate. Appellant's petition referred to the charter and copied these provisions in full and it is obvious that the trial judge accepted such as part of the charter without additional requirement of proof, or without requiring proof that the provisions were part of a public act. It does not appear, however, that the trial judge took judicial notice of provisions of the entire charter, nor of any provisions other than those relative to the leasing of real estate. That having been done, their status was exactly the same as that of a fact in evidence.

◼ Our holding should not be distorted in order to contend that we held the transaction between the City of Houston and Messrs. Dervas and Bellesiotis to be either a license or a franchise, for we expressly stated that we did not do so. We did not intend to do more than hold that *under the circumstances of the case* the accomplishment of the transaction was not to be enjoined upon the premise that it was a lease. Nor does the fact that counsel for both parties proceeded upon the assumption that it was a lease as contemplated by charter bind this court upon a like assumption. Appellant carried the burden in the trial court and since his case was founded upon the contention that the transaction amounted to a lease, he was required to discharge his burden. Had he discharged the burden, or had the facts and circumstances been eliminated as a question and in themselves established the transaction as a lease, then it would have been proper for us to proceed to the other legal questions raised by appellant's points of error. The appellant having failed in such respect, we cannot here permit him for the first time to seek like injunctive relief under an alternative theory not advanced in the court below. Even though he be entitled to relief under such a theory, our jurisdiction could be invoked only after proper preliminary proceedings thereon had received attention in a trial court.

Appellant's second motion for rehearing is overruled.