99 So.2d 571 (1957)
PARK-N-SHOP, Inc., a Florida Corporation, the Tampa Tribune Publishing Company, a Florida Corporation, Airdrome Park, Incorporated, a Florida Corporation, and Henderson Hickey, Appellants,
v.
W.S. SPARKMAN, as Tax Assessor of Hillsborough County, Florida, and ex officio Tax Assessor of the City of Tampa, Florida, M.I. Schaffer, Sigmund Dornbush, County of Hillsborough, a political subdivision of the State of Florida, and Kinney of Florida, Inc., a Florida Corporation, Appellees.
Supreme Court of Florida.
November 15, 1957.
Rehearing Denied January 23, 1958.
Reeves, Allen & Dell, Morison Buck and A.B. Angle, Tampa, for appellants.
Wm. C. McLean, Tampa, for W.S. Sparkman, as Tax Assessor.
Paul Game, Tampa, for appellee M.I. Schaffer.
Charles F. Blake, Tampa, for appellee Kinney Corp.
*572 THOMAS, Acting Chief Justice.
A block in the center of the city of Tampa, owned by Hillsborough County, had for many years been occupied by the county court house. The building was razed and a new one was erected on another site. Then, in 1953, the county leased the vacant property to certain individuals for a period of five and one-half years for commercial use with an option to purchase on specific terms.
Among the provisions of the lease was one that "no ad valorem taxes whatsoever (County or City)" should be levied against the property but any building constructed upon it should be taxed when substantially completed. By another provision the tenants had the unrestricted right to assign the lease "in whole or in part * * *."
According to appellants' statement of the case the lessees went into possession of the property in September 1953, and they, their assigns and sublessees have ever since conducted on the premises private businesses for profit and no part of the property has been used for a municipal, educational, literary, scientific, religious, charitable or "public" purpose. No taxes have been assessed or levied for the year 1954 and following years. There is no real dispute about the basic facts.
The appellants charge that the block in the hands of private individuals is being used for commercial enterprises that compete with other businesses, and compete unfairly because the operators using the property in question are relieved of taxes while those who compete with them must carry their share of the tax burden.
In his final decree the chancellor held that the lease was one the county was authorized to make, but that the tax assessor of Hillsborough County should assess the leasehold interest as tangible personal property for the year 1954 and the remainder of the term of the lease or until the option contained in it should be exercised.
The controlling question, so the appellants state, is whether or not property "devoted to a private, commercial, highly competitive use can be made exempt from City and County ad valorem taxes by a private agreement made by the County alone." They insist that the property should be placed on the assessment rolls of the county and city and kept there so long as it is privately controlled but that if such procedure is not ordered by this court that part of the decree of the chancellor directing that the lease be assessed as tangible personal property should not be disturbed. The county is content with the decree entered. The rest of the appellees take the position that the chancellor was right in holding that the county was authorized to agree to relieve the property from ad valorem taxation but wrong in holding that the lease was assessable as tangible personal property.
The appellants introduce the subject by citing the provision of Sec. 1 of Article IX of the Constitution, F.S.A. that the "Legislature shall provide for a uniform and equal rate of taxation," with certain exceptions, and the provision of Sec. 5 of Article IX of the Constitution that the "Legislature shall authorize the several counties and incorporated cities or towns * * * to assess and impose taxes for county and municipal purposes, and for no other purposes, and all property shall be taxed upon the principles established for State taxation." When Secs. 1 and 5 of Article IX of the Constitution are read together, as they should be, it is plain that the legislature was empowered to authorize cities and counties uniformly and equally to impose taxes on all property. Although ad valorem taxes on real property are no longer levied by the state, it is necessary to refer to Sec. 1 of Article IX to determine the "principles" governing the imposition of taxes under Sec. 5 of Article IX. By the former section, the legislature was mandated to "prescribe such regulations as [should] secure a just valuation of all property, *573 both real and personal, excepting such property as [might] be exempted by law for municipal" and certain other purposes.
In fine, the rate of taxation was required to be uniform and equal and the valuation to be just; the legislature was granted the power to exempt property devoted to municipal purposes.
It will be noted from the digest of Sec. 1 of Article IX that references are to exemption from taxes of property used for municipal purposes while there is no reference to that used for county purposes. It is Sec. 5 of Article IX that contains the admonition that cities and counties may tax for municipal and county purposes, but for no other purpose. There is no specific mention in either section of use of property for a "public" purpose, the adjective copied from appellants' question.
With this preface we turn to Sec. 192.06, Florida Statutes 1953, and F.S.A., and find in paragraph (1) that "All property * * of the United States and of this state, except such property of the United States as shall be subject to taxation by this State or any political subdivision or municipality thereof under any law of the United States" shall be exempt from taxation. In this part of the statute the legislature apparently recognized a distinction between a municipality and a political subdivision of the state, namely a county.
By the following paragraph of the section "All public property of the several counties, [and] cities * * * in this state, used or intended for public purposes" were declared to be exempt. Here the word "public" is encountered for the first time in our research.
So, argue the appellants, it is only "public" property and that used for municipal, educational, literary, scientific, religious and charitable purposes that are exempt, and the property involved in this litigation does not fall in any of these classes.
In dealing with the question before us it is very difficult to keep from scrambling constitutional and statutory provisions relating to exemptions from taxation of properties used for certain purposes including a municipal purpose, and relating to taxation by the county for county purposes.
It seems from the decisions of this court and those of other jurisdictions that the criterion in determining the taxable character of property is the nature of the use to which it is put and not the ownership. City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744; University Club v. Lanier, 119 Fla. 146, 161 So. 78; State ex rel. Harper v. McDavid, 145 Fla. 605, 200 So. 100, 133 A.L.R. 360; City of Cleveland v. Ruple, 130 Ohio St. 465, 200 N.E. 507, 103 A.L.R. 853. But these decisions are of no assistance because the primary problem is whether or not a tax may be levied on property of the county. We will presently reach the secondary problem, that is, the effect of the exemption provision on the fortunes of the city.
We have been directed to the following special acts granting authority to the county to sell or lease lands no longer needed for a public purpose: Chapter 12848, Laws of Florida, Special Acts of 1927; Chapter 22991, Laws of Florida, Acts of 1945; Chapter 25878, Laws of Florida, Special Acts of 1949; and Chapter 25895, Laws of Florida, Special Acts of 1949; and to Secs. 125.35 et seq., and 125.40, Florida Statutes 1953, and F.S.A., authorizing counties to dispose of unneeded property. But we see no occasion to explore the effect of these laws inasmuch as no attack is made on the right of the county to lease, but only on the provision with reference to the taxes.
After a careful study of appropriate provisions of the Constitution and the statutes we decide that property of the state and of a county, which is a political division of the state, Sec. 1, Article VIII, is immune from taxation, and we say this despite the references to such property in *574 Sec. 192.06(1) and (2), supra, as being exempt. As we have shown in quoting the provisions in the Constitution dealing with county taxes, the inhibitions were aimed at the expenditure for other than county purposes of taxes raised by counties.
It is apparent to us that it would have been improper for the county to have allowed the obviously valuable property to have remained idle if it could have made it produce an income, and nothing has been uttered against the amount of the consideration for the deal the county made. The value of the land and the amount it was to produce are evident from these terms: the lessees paid $100,000 for an option to purchase before the expiration of five and one-half years; they agreed to pay rental of $25,000 yearly; and if the option is exercised they are bound to pay $700,000 without any credit for rental meanwhile paid.
Feeling that the property of the county was immune from taxation we decline to hold that it should assess taxes against its own land, pay the money to itself, then surcharge the lessees for the amount on the theory that the so-called tax exemption provision of the lease was illegal. No testimony was ever taken in the case so for all we know the estimated amount of taxes which the lessees would likely have paid on property of similar value was taken into consideration in fixing the amount of rent to be paid.
We are puzzled by the attempt of the county to relieve the lessees of the payment of city taxes, but certainly the city could not, as the county could not, assess county property for taxation. We realize that the taxpayers who are complaining are payers of city as well as county taxes but since we are convinced that they cannot prevail in their attack on the relief of the lessees from the burden of county taxes, we think it follows that they cannot, for the same reasons, succeed in their assault on the action relieving the lessees from the payment of city taxes.
Finally we approach a solution to the last question, i.e., whether or not that part of the decree directing the assessor to assess the value of the leasehold interest as tangible personal property can stand. We think we must answer in the negative because of the very definition of that sort of property appearing in Sec. 200.01, Florida Statutes 1953, and F.S.A. In the statute it is provided that tangible personal property "shall include all goods, chattels, boats, vessels, vehicles (except motor vehicles), animals and other articles of value capable of manual possession and whose chief value shall consist of the thing itself and not what it represents." It is obvious to us that a lease is none of these.
The examination of the statute referring to tangible property has led us to the ones dealing with intangible property generally defined as "personal property which is not in itself intrinsically valuable but which derives its chief value from that which it represents." Sec. 199.01, Florida Statutes 1953, and F.S.A. The interest of the lessee under a lease such as the one under study does not fall in this definition.
In our examination of the tax statutes we have not found provisions for the specific assessment of the lessees' interest and we have been referred to none, although we are not conscious of any reason why the legislature could not set up machinery for that purpose in situations such as that presented in this case, but we are satisfied that the interests of lessees are neither tangible nor intangible personal property as presently defined.
We conclude by quoting Sec. 3 of Article IX of the Constitution: "No tax shall be levied except in pursuance of law."
The decree is affirmed in part and reversed in part.
ROBERTS, DREW, THORNAL and O'CONNELL, JJ., concur.