Dr. Elton J. Gissendanner Executive Director Department of Natural Resources Marjory Stoneman Douglas Building 3900 Commonwealth Boulevard Tallahassee, Florida 32303
Dear Dr. Gissendanner:
This is in response to your request for an opinion on the following question:
 IS THE DEPARTMENT OF NATURAL RESOURCES LEGALLY LIABLE FOR THE PAYMENT OF AD VALOREM TAXES ASSESSED BY DRAINAGE DISTRICTS AND WATER MANAGEMENT DISTRICTS PURSUANT TO CHAPTERS 298 AND 373, FLORIDA STATUTES, RESPECTIVELY?
You state that you are seeking this opinion pursuant to a recommendation of the Auditor General for clarification of Chapters 298 and 373, F.S. The property involved is state-owned lands title to which is vested in the Board of Trustees of the Internal Improvement Trust fund with staff duties and functions related to acquisition, administration, and disposition performed by the Division of State Lands of the Department of Natural Resources, and which is not leased to or operated by a private party for commercial purposes. See, ss 253.002 and 20.25, F.S. The general rule applicable to the taxation of state-owned land is that such land is not subject to assessment and levy of taxes by other governmental agencies of the state having jurisdiction over the property in the absence of a clearly expressed legislative intention that state lands are to be subject to the taxes in question. See, 71 Am.Jur.2d State and Local Taxation s 336 (1973), where it is provided that `[t]ax statutes are construed not to embrace property of the government or its instrumentalities unless the legislative intention to include such property is plainly and clearly expressed. This immunity rests upon fundamental principles of government, it being necessary in order that the functions of government shall not be unduly impeded, as well as for other reasons.' At s 340 of that treatise it is stated that `[t]he exemption of state property extends to the property of all public departments of the state, even though the title is in a board of trustees or in a separate corporation . . . .' See also, 84 C.J.S. Taxation s 200 (1954), which provides: `While in the absence of any constitutional prohibition the state may tax its own property, the presumption is always against an intention to do so, and such property is impliedly immune from taxation unless in intention to include it is clearly manifested.' In Dickinson v. City of Tallahassee, 325 So.2d 1, 3 (Fla. 1975) the Florida Supreme Court stated that `[t]he State's immunity from taxation is so well established in Florida's jurisprudence that little elaboration is needed here.' In State ex rel. Charlotte County v. Alford, 107 So.2d 27, 29 (Fla. 1958), the court stated that `[a]lthough our statutes specifically exempt such State owned lands, such exemption is not dependent upon statutory or constitutional provisions but rests upon broad grounds of fundamentals in government.' And see, Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571, 573-574 (Fla. 1958) (property of the state is immune from taxation); AGO 49-368, August 10, 1948, Biennial Report of the Attorney General, 1949-1950, p. 345 (state lands, including Murphy Act lands, are not subject to assessment and levy of inland navigation district taxes in the absence of express statutory authorization for assessment). Thus, the general rule, as well as the rule applicable in Florida, is that a public agency of the state must point to specific statutory authorization in order to tax state-owned land, otherwise such land is immune from taxation.
This opinion will apply this general principle to three categories of water management and drainage districts constituted in Florida in order to facilitate the performance of staff duties and functions relation to the administration of state-owned lands by the Division of State Lands: first, to water management districts created pursuant to Ch. 373, F.S.; Second, to water control districts operating under the authority of Ch. 298, F.S.; third, to other types of drainage, water control and conservancy districts created by and operating under the authority of special acts.
Chapter 373, F.S., known as the `Florida Water Resources Act of 1972,' was enacted in order to conserve and control the waters of the state in order to realize their full beneficial use. Section373.016, F.S. In order to carry out the legislative policy of Ch. 373, the state was geographically divided into five water management districts. See, s 373.069, F.S. One of which, the South Florida Water Management District, is listed by the Auditor General as one of the taxing authorities to which the department paid ad valorem taxes. My examination of the financing and taxation provisions of Ch. 373, F.S., does not disclose any authorization for the five water management districts created pursuant to s 373.069, F.S., to impose ad valorem taxes or assessments of any kind on state-owned lands. In fact, subsection (2) of s 373.543, F.S., expressly provides:
 There shall be excluded from district taxes all bodies of navigable water and unreclaimed water areas meandered by the public surveys, all rights-of-way of said district, all areas devoted or dedicated to the use of and for the works of the district, rights-of-way of state and county highways, and streets within the limits of incorporated towns, and property owned by a public agency open to the use of the public or for the public benefit not leased to or operated by a private agency. (e.s.)
This provision merely states the general rule regarding taxation of state-owned land and is not necessary in order to preserve the immunity of such lands against taxation. Such immunity from taxation is presumed and is not in the nature of an exemption but rather exists, as set forth by the authorities cited above, as a result of fundamental principles of government. See also, s373.503(1), F.S., for an expression of legislative intent and policy towards the financing of the activities of the five water management districts operating under Ch. 373, F.S. Thus, it is therefore my opinion that state-owned lands title to which is vested in Board of Trustees of the Internal Improvement Trust Fund are not subject to ad valorem taxes assessed by the five water management districts created by s 373.069, F.S., and operating under the authority of Ch. 373, F.S.
Chapter 298, F.S., relating to drainage and water control formerly provided a method for the formation of water control districts. See, ss 298.01-298.05, F.S. (1979), repealed by Ch. 80-281, Laws of Florida. These water control districts included both water-management districts and drainage districts. Section298.001, F.S., enacted by Ch. 78-153, Laws of Florida, provides: `A water-management district or a drainage district heretofore or hereafter created pursuant to the method authorized in chapter 298 or a water-management district created by special act to operate under the authority of chapter 298 shall be designated as a water control district.' Despite the repeal by Ch. 80-281, Laws of Florida, of the district formation provisions in s 298.01-298.05, F.S. (1979), it was the legislative intent that water control districts established prior to July 1, 1980, pursuant to these repealed provisions, would continue to operate under the authority in Ch. 298, F.S. See, s 298.01, F.S. On and after July 1, 1980, `no water control district may be created except pursuant to s.125.01 or a special act of the Legislature.' Section 298.01, F.S. For such water control districts and pertinent to your question, subsection (3) of s 298.36, F.S., provides:
 The benefits, and all lands in said [water control] district belonging to the state, shall be assessed to, and the taxes thereon shall be paid by, the state out of funds on hand, or which may hereafter be obtained, derived from the sale of lands belonging to the state. This provision shall apply to all taxes in any district including maintenance and ad valorem taxes, either levied under this or any other law, and to taxes assessed for preliminary work and expenses, as provided in s. 298.29, as well as to the taxes provided for in this section.
This statute waived the state's immunity from taxation by water control districts, operating under the authority of Ch. 298, F.S. However, in 1967 the Legislature amended Ch. 253, F.S., relating to trustees of the Internal Improvement Trust Fund, by increasing the number of trustees and redefining their powers and duties. See, Ch. 67-2236, Laws of Florida. Section 2 of Ch. 67-2236 contained a provision, now codified as subsection (5) of s253.03, F.S. (1982 Supp.), which provides:
 It is the specific intent of the Legislature that this act shall repeal any provision of state law which may require the Board of Trustees of the Internal Improvement Trust Fund to pay taxes or assessments of any kind to any state or local public agency on lands which are transferred or conveyed to the Board of Trustees of the Internal Improvement Trust Fund under the terms of the this act and which at the time of the passage of this act are entitled to tax-exempt status under the constitution or laws of the state. (e.s.)
Another provision of that act, presently subsection (6) of s253.03, F.S. (1982 Supp.), provided in pertinent part, that `[c]ommencing [September 1, 1967] all land held in the name of the state or any of its boards, departments, agencies or commissions shall be deemed to be vested in the trustees of the internal improvement fund for the use and benefit of the state.' See, s 2, Ch. 67-2236, Laws of Florida. Subsequent legislation changed the trustees' name to the Board of Trustees of the Internal Improvement Trust Fund. See, Ch. 69-106, s 27, Laws of Florida. Section 253.03(5), F.S. (1982 Supp.), is a general repeal of inconsistent state laws and operates to impliedly repeal any provision of state law which might require the Board of Trustees of the Internal Improvement Trust Fund to pay taxes or assessments of any kind to any state or local public agency on land transferred or conveyed to the board under the terms of Ch. 253, F.S., as amended by Chs. 67-269 and 67-2236, Laws of Florida. This would appear to include s 298.36(3), F.S.
Section 298.36(3), F.S., prior to 1979, had remained in force in its present form since 1936 without amendment. See, Comprehensive General Laws, s 1467 (1936). In 1979, subsequent to the general repeal, contained in Ch. 67-2236, of any provision of state law requiring the Board of Trustees to pay taxes or assessments of any kind, the Legislature amended subsection (3) of s 298.36 by striking the word `drainage' from the statute. The question arises whether the subsequent amendment of s 298.36(3), F.S., acts to revitalize this statute and thus once again subject state-owned lands to ad valorem taxes imposed by water control districts operating under Ch. 298, F.S. It is stated at 73 Am.Jur.2dStatutes s 429 (1974), that `[w]here a general compilation or code includes two conflicting sections or provisions carried forward from prior enacted statutes, the rule is that that section or provision should prevail which can be considered the last expression of the lawmaking power, the other being rejected as impliedly a repealed law and of no present effect.' See also, 12 A.L.R.2d 423, 430, s 3; Oldham v. Rooks, 361 So.2d 140 (Fla. 1978); Hillsborough County Commissioners v. Jackson, 50 So. 423
(Fla. 1909). Cf., 82 C.J.S. Statutes s 306 (1953) (manifest inadvertence of *3180 a clerical force in collating a compilation of statutes cannot have the effect of reviving a dead law); 12 A.L.R.2d 423, 424, s 1 (whether the adoption by a legislature of compiled or revised statutes which include a former repealed or suspended provision will operate to put such provision into effect as present law is a question of the legislative intent). While this office must give any statute in the current compilation of the Florida Statutes a presumption of validity, an examination of the legislative history and circumstances behind the amendment of subsection (3) of s 298.36, F.S., leads to the conclusion that subsection (5) of s 253.03 must be considered the last expression of the lawmaking power, and that including subsection (3) of s298.36 in an overall editing and revision of Ch. 298 in order to make the statutory terms of the chapter consistent with earlier substantive changes was inadvertent which did not have the effect of revitalizing the provision.
Chapter 298, F.S. (1971), formerly applied solely to drainage districts. In 1972, the Legislature extensively revised the chapter in order to more effectively accomplish the conservation, protection, management, and control of the waters of the state. See, Ch. 72-291, Laws of Florida. In the provision providing for the formation of districts contained in s 298.01, F.S. (1971), references to `drainage' district were changed to `water management' district. Chapter 72-291, Laws of Florida. However, references to `drainage' districts in other sections of Ch. 298 were overlooked and retained. In 1978, the Legislature in order to correct the confusion in the law resulting from the term `water-management district' being used in two separate chapters of the Florida Statutes, Ch. 298, F.S., and Ch. 373, F.S., enacted Ch. 78-153, Laws of Florida. Section 2 of Ch. 78-153 directed the Division of Statutory Revision of the Joint Legislative Management Committee `to prepare legislation to substitute the term `water control district' for the term `water-management district' and substitute the term `district' for the term `drainage district'
wherever these terms appear in chapter 298, Florida Statutes.' (e.s.) The Division of Statutory Revision in complying with that mandate prepared House Bill No. 644, a reviser's bill, enacted as Ch. 79-5, Laws of Florida, which substitutes the term `water control district' for the term `water-management district' and strikes the term `drainage' wherever it occurs in Ch. 298, F.S. Section 17 of Ch. 79-5 amends subsection (3) of s 298.36, F.S., consistent with the legislative direction, by deleting the word `drainage' in that subsection. No other amendment of subsection (3) was made, nor was any reference made to subsection (5) of s253.03, F.S., which would evince a legislative intent to revive subsection (3) of s 298.36, F.S. It is therefore my opinion that, unless and until judicially or legislatively determined otherwise, there does not appear to be any current statutory authorization for the state to pay ad valorem taxes to any water control district operating under the authority contained in Ch. 298, F.S.
I note that three of the taxing authorities listed in the Auditor General's report, the East Beach Water Control District, the Lake Worth Drainage District and the South Shore Drainage District, appear to be operating under the authority of Ch. 298, F.S. See, Ch. 75-469, Laws of Florida, Ch. 61-1747, s 2, Laws of Florida, and Ch. 71-819, s 2, Laws of Florida. These three special districts would therefore not appear to have the authority to impose ad valorem taxes on state-owned land pursuant to Ch. 298, F.S. I have examined the other provisions of the Laws of Florida relating to these three special districts and do not discern any other legislative authorization for the imposition of ad valorem taxes on state-owned land by such districts.
The remaining taxing district listed in the Auditor General's report, the South Florida Conservancy District, falls within the third category, other types of drainage, water control and conservancy districts created by and operating under the authority of special acts. Generally, the special acts governing the particular special district and providing its taxation authority would have to be examined in order to ascertain if any current statutory authorization to tax state-owned land exists. This office cannot undertake an exhaustive review of all the various special water control, conservancy, and drainage districts throughout the state to ascertain if there is any legislation authorizing the taxation of state-owned lands for any particular purpose. However, as to the particular district listed in the Auditor General's report, the South Florida Conservancy District, it would not appear to have current authority to impose ad valorem taxes on state-owned land. This district operates pursuant to the basic grant of authority contained in Ch. 17258, 1935, Laws of Florida, as amended. Section 6 of that act, in pertinent part, provided `[t]hat the lands within said District held by the Trustees of the Internal Improvement Fund of the State of Florida shall be subject to the taxes hereby imposed . . . .' Cf., State exrel. Board of Supervisors of South Florida Conservancy District v. Caldwell, 35 So.2d 642 (Fla. 1948) (the Legislature may provide for the use of the internal improvement fund in aid of and for drainage). This authorization also falls within the purview of the general repeal contained in and was impliedly repealed by s 2 of Ch. 67-2236, Laws of Florida (s 253.03[5], F.S.). No legislation relating to the district's authority to levy ad valorem taxes passed subsequent to the effective date of Ch. 67-2236 reveals any intention to authorize the taxation of state-owned lands or to amend and revive s 6 of Ch. 17258, 1935, Laws of Florida. See,e.g., Ch. 71-380, 75-378, 81-463, Laws of Florida, relating to district maintenance taxes. I must therefore conclude that no current statutory authority exists for the South Florida Conservancy District to impose ad valorem taxes on state-owned land.
In summary, I therefore conclude, until and unless legislatively clarified or judicially determined otherwise, that state-owned lands are not subject to ad valorem taxes assessed by the five water management districts created by and operating under the authority of Ch. 373, F.S.; there is no current statutory authorization for the state to pay ad valorem taxes to any water control district operating under the authority contained in Ch.298, F.S.; and no current statutory authority exists for the South Florida Conservancy District to impose ad valorem taxes on state-owned land.
Sincerely,
Jim Smith, Attorney General
Prepared by: Craig Willis, Assistant Attorney General