No. 97-236

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


THE DUCK INN, INC.,

Plaintiff and Appellant,

v.

MONTANA STATE UNIVERSITY-NORTHERN,

Defendant and Respondent.


APPEAL FROM:   District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable John Warner, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Chris R. Young; Young & Brown, Havre, Montana

For Respondent:

LeRoy H. Schramm, Chief Legal Counsel, Montana
University System, Helena, Montana


Submitted on Briefs: October 9, 1997

Decided:    December 9, 1997

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The Duck Inn, Inc. (Duck Inn) appeals from the judgment entered by the Twelfth Judicial District Court, Hill County, on its order granting summary judgment to Montana State University - Northern (Northern) and dismissing the Duck Inn's complaint. We affirm.

The issues on appeal are:

1. Did the District Court err in concluding that Northern's conduct in renting its facilities to private persons and organizations is authorized by õ 20-25-302, MCA (1993)?

2. Did the District Court err in concluding that õ 20-25-302, MCA (1993), does not violate the Montana Constitution?

BACKGROUND

The Duck Inn is a Montana corporation with its principal place of business in Havre, Montana. As part of its business, the Duck Inn provides facilities, food and beverages to the general public for the purpose of hosting parties, reunions, conventions and receptions.

Northern is a tax-supported unit of the Montana university system; its buildings and property belong to the State of Montana. Northern is funded via taxes and general fund appropriations, student fees and tuition, fees charged to users of campus services and facilities, federal grants, bond proceeds, interest income and private gifts.

Northern regularly rents its facilities to private persons and organizations for parties, reunions, conventions and receptions. Its campus food service provider has the exclusive right, pursuant to contract, to cater food service for all such gatherings on Northern's campus and, in return, Northern receives 10% of the gross revenues realized from the catering. In addition, Northern receives 100% of the revenues received as payment for the rental of campus facilities. Northern applies these revenues to supplement the operating funds available for maintenance of the rented facilities and to pay off the bond issues to which the revenues have been pledged.

In 1994, the Duck Inn filed a complaint for declaratory judgment and application for preliminary injunction against Northern. The complaint alleged that Northern's leasing of its facilities to private persons and organizations for various events placed Northern in direct competition with the Duck Inn's business and violated Montana statutes. It also alleged that, if Northern's leasing activities did not exceed statutory authority, the applicable statute violated the Montana Constitution. The Duck Inn sought a declaratory judgment prohibiting Northern's leasing activities and an order to show cause why its application for a preliminary injunction should not be granted.

After a hearing, the District Court denied the Duck Inn's request for a preliminary injunction. It determined that, while the Duck Inn had shown that Northern did compete

with the Duck Inn's business, it was not clear that such competition was prohibited by statute or the Montana Constitution.

Northern subsequently moved to dismiss the complaint on the basis that it failed to state a claim upon which relief could be granted. After full briefing by the parties, the District Court concluded that Northern's practice of renting its facilities did not violate either õ 20-25-302, MCA (1993), or the Montana Constitution, but observed that the record indicated that Northern might not have followed its own policies regarding the use of facilities. On that basis, the District Court denied Northern's motion to dismiss and granted the Duck Inn leave to amend the complaint to seek damages and injunctive relief based on alleged violations of Northern's policies. Thereafter, the Duck Inn filed a notice of appeal of the District Court's order and, on November 7, 1995, this Court dismissed the appeal without prejudice because no final judgment had been entered.

The Duck Inn subsequently filed an amended complaint generally alleging, in addition to the bases asserted in the original complaint, that Northern's leasing activities violated its own policies. The parties filed cross motions for summary judgment and the District Court ultimately granted Northern's motion relating to the alleged violation of policies on the basis that no genuine issue of material fact existed as to whether Northern violated its current policies relating to the rental of campus facilities. The court incorporated its earlier decision that Northern's leasing practices did not violate either Montana statute or the Montana Constitution into its order on summary judgment and ordered the dismissal of the Duck Inn's complaint. Judgment was entered accordingly and the Duck Inn appeals.

### STANDARD OF REVIEW

We observe at the outset that the Duck Inn does not appeal from the District Court's determination that no genuine issue of material fact existed with regard to whether Northern's rental practices violated its own policies. The Duck Inn's appeal is limited to that portion of the District Court's order on summary judgment which incorporated its earlier legal conclusions that Northern's leasing activities did not violate õ 20-25-302, MCA (1993), or the Montana Constitution. Under such a circumstance, we need only determine whether the district court correctly interpreted the law. See Ash Grove Cement Co. v. Jefferson County (Mont. 1997), 943 P.2d 85, 89, 54 St.Rep. 756, 759 (citation omitted).

### DISCUSSION

1. Did the District Court err in concluding that Northern's conduct in renting its facilities to private persons and organizations is authorized by õ 20-25-302, MCA (1993)?

Section 20-25-302, MCA (1993), provides, in pertinent part, that the regents of

the Montana university system may

(5) rent the facilities to other public or private persons, firms, and corporations for such uses, at such times, for such periods, and at such rates as in the regents' judgment will be consistent with the full use thereof for academic purposes and will add to the revenues available for capital costs and debt service[.]

The only portion of the statute which is at issue here is the meaning of the phrase "consistent with."  "In interpreting a statute, we look first to the plain meaning of the words it contains."  Werre v. David (1996), 275 Mont. 376, 385, 913 P.2d 625, 631 (citation omitted).  Moreover, in the search for plain meaning, we give words their usual and ordinary meaning.  Werre, 913 P.2d at 631 (citations omitted).  Merriam Webster's Collegiate Dictionary 247 (10th ed. 1993) defines consistent as "free from variation or contradiction;" "compatible."  The American Heritage Dictionary 402 (3rd ed. 1992), also defines consistent as "compatible."  Applying this definition to õ 20-25-302(5), MCA (1993), we conclude that the statute expressly authorizes Northern to rent its facilities to any person or entity for any use, at any time, which is compatible with--and does not contradict--the full use of the facilities for academic purposes and which also adds to the revenues available for capital costs and debt service.  There is no showing on the record before us that Northern's rentals are incompatible with, or contradict, the full use of the facilities for academic purposes.  Furthermore, it is agreed that Northern receives revenues from the rentals which add to revenues available for capital costs or debt service.

The Duck Inn contends that the phrase "consistent with" means "directly related to" Northern's academic purposes.  It provides no authority for such a definition, however.  An appellant bears the burden of establishing error by the trial court and Rule 23, M.R.App.P., requires an appellant to cite to authority for the position being advanced on appeal.  The Duck Inn having failed to do so, it cannot establish error with regard to the District Court's definition of "consistent" as, among other things, "compatible, not contradictory" and the court's corresponding conclusion that õ 20-25-302, MCA (1993), authorizes Northern's leasing activities.

The Duck Inn also asserts, although obliquely, that it is unwise and unfair for tax-supported institutions such as Northern to rent their facilities in direct competition with private sector businesses.  Many people would agree with the Duck Inn's assertion.  As a general rule, however, the public policy of the State of Montana is set by the Montana Legislature through its enactment of statutes, and this Court may not concern itself

with
the wisdom of such statutes. See, e.g., Gryczan v. State (Mont. 1997), 942 P.2d 112, 125, 54 St.Rep. 699, 708; Estate of Strever v. Cline (1996), 278 Mont. 165, 180, 924 P.2d 666, 675; Young v. Board of Trustees, Etc. (1931), 90 Mont. 576, 584, 4 P.2d 725, 728.

We also observe that the Duck Inn effectively concedes that õ 20-25-302, MCA (1993), authorizes Northern's rentals by arguing that the statute authorizes such rentals "only if its administrative rules allowing such conduct are strictly confined within the applicable legislative guidelines, and only if its conduct strictly adheres to both the letter and spirit of the policies and procedures adopted by the Board of Regents and Northern." While it cannot be gainsaid that administrative regulations or, as here, campus policies cannot authorize conduct not within the purview of the statute (see, e.g., Bick v. State, Dept. of Justice (1986), 224 Mont. 455, 457, 730 P.2d 418, 420), the Duck Inn did not challenge the policies under which Northern rents its facilities on the basis that they are too expansive or, indeed, at all. It merely contended in the District Court that Northern was violating its own policies. The District Court determined otherwise and, as noted above, the Duck Inn has not appealed that determination.

Finally, the Duck Inn argues that several of the cases relied on by Northern in the District Court are factually distinguishable from the present case and do not support Northern's position here. We agree that the cases are, to a large extent, factually distinguishable in that they address the leasing out of different public facilities by different governmental units under different statutes than that at issue here. See, e.g., Colwell v. City of Great Falls (1945), 117 Mont. 126, 157 P.2d 1013, overruled by Prezeau v. City of Whitefish (1982), 198 Mont. 416, 646 P.2d 1186; Young, 4 P.2d 725. In this regard, we need observe only that the cases noted by the Duck Inn were neither necessary to, nor the basis for, the District Court's decision that Northern's leasing activities are authorized by õ 20-25-302, MCA (1993). Likewise, those cases have no relevance to, or bearing on, the conclusion we reached above under "plain meaning" principles of statutory construction.

We hold that the District Court did not err in concluding that õ 20-25-302, MCA (1993), authorizes Northern to rent its facilities to private persons and organizations so long as the rentals are compatible with the full use of the facilities for academic purposes and add to the revenues available for capital costs or debt service.

2. Did the District Court err in concluding that õ 20-25-302, MCA (1993), does

not violate the Montana Constitution?

The Duck Inn advances two challenges to the District Court's conclusion that õ 20-25-302, MCA (1993), does not violate the Montana Constitution. First, it contends that the statute constitutes an unconstitutional delegation of legislative authority to an administrative agency. Second, it argues that the leasing of facilities on Northern's campus constitutes a use of tax-supported facilities for a private purpose--competition with private enterprise--which infringes on the constitutional requirement that taxes may be levied only for public purposes. We address these arguments in turn.

Article V, Section 1 of the Montana Constitution provides that "[t]he legislative power is vested in a legislature consisting of a senate and a house of representatives." The Duck Inn relies on White v. State (1988), 233 Mont. 81, 759 P.2d 971, and Douglas v. Judge (1977), 174 Mont. 32, 568 P.2d 530, in arguing that õ 20-25-302, MCA (1993), constitutes an unconstitutional delegation of legislative power because it fails to prescribe a policy, standard or rule for implementing the powers delegated to an administrative agency.

It is true that White and Douglas set forth the general standard against which legislative delegations of power are measured in Montana. In Douglas, where a delegation of power to the Board of Natural Resources and Conservation was at issue, we stated that, in delegating powers to an administrative body, "the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto. . . ."

Douglas, 568 P.2d at 533-34 (citations omitted). We reiterated that standard in White in the context of a challenge to the delegation of legislative power to the Science and Technology Development Board. White, 759 P.2d at 975.

Applying the principles set forth in Douglas and White to the present case, it is clear that õ 20-25-302, MCA (1993), is not an unconstitutional delegation of legislative authority to the board of regents. The policy underlying the statute is set forth in the statute; that policy is to increase revenues available for the capital costs of, and debt service on, campus facilities. The implicit, but clear, rationale behind the statute is to minimize the tax support necessary to fund units of the Montana university system by leasing campus facilities. Likewise, õ 20-25-302, MCA (1993), expressly constrains the leasing of such facilities by mandating that the leasing must be consistent with full use of the facilities for the academic purposes for which they were established. Here, this

constraint on the board of regents is the "standard" or "guide" required by Douglas for a proper legislative delegation of power.

The Duck Inn contends, in this regard, that the "regents' discretion" language contained in õ 20-25-302, MCA (1993), provides insufficient limits on the legislative delegation of power. It provides no legal authority for its position, however, and we conclude that the regents' discretion is sufficiently limited by the statutory requirements that the leasing be consistent with the full use of the facilities for academic purposes and produce revenues for capital costs or debt service.

Moreover, the regents have authority over the Montana university system which is independent of that delegated by the legislature. Article X, Section 9 of the Montana Constitution expressly creates the board of regents as a constitutional entity and vests the government and control of the Montana university system therein. Indeed, the regents are given "full power, responsibility, and authority to supervise, coordinate, manage and control the Montana university system . . . ." Art. X, Sec. 9, Mont. Const. Under a similar circumstance involving independent authority, the United States Supreme Court has held that limitations on legislative delegation are "less stringent in cases where the entity exercising the delegated authority itself possesses independent authority over the subject matter." United States v. Mazurie (1975), 419 U.S. 544, 556-57, 95 S.Ct. 710, 717, 42 L.Ed.2d 706, 716 (citation omitted). We adopt the Supreme Court's reasoning with regard to legislative delegations of power to the board of regents in Montana.

The Duck Inn's second constitutional argument is that õ 20-25-302, MCA (1993), permits the use of tax revenues of the State of Montana for private purposes in violation of Article VIII, Section 1 of the Montana Constitution, which provides that "[t]axes shall be levied . . . for public purposes." It relies on Hollow v. State (1986), 222 Mont. 478, 723 P.2d 227, and cases from other jurisdictions in support of its argument, and expressly urges this Court to adopt the rationale and holding set forth in White Eagle Oil & Refining Co. v. Gunderson (S.D. 1925), 205 N.W. 614.

We begin with the constitutional provision itself, which necessitates a determination of whether the present case directly implicates the use of taxes levied for a public purpose for a private use. We conclude that it does not. The Duck Inn does not challenge the levy of any tax--or a statute authorizing such a levy--in this proceeding. Moreover, nothing in the record before us suggests that this case involves tax monies levied for the proper public purpose of higher education being expended directly for Northern's leasing activities or the private gatherings held

pursuant thereto. To the contrary, as discussed above, the purpose of õ 20-25-302, MCA (1993), is to relieve or contain, to at least a minimal extent, the tax burden associated with university-level funding requirements. Thus, to the extent Article VIII, Section 1 applies here at all, õ 20-25-302, MCA (1993), and Northern's leasing activities thereunder appear to have "public purposes" as that term is used in Article VIII, Section 1 of the Montana Constitution.

In this regard, the Duck Inn's reliance on Hollow is misplaced. There, legislation permitted the Montana Economic Development Board to use coal severance tax revenues from the in-state investment fund to satisfy guaranties of private debts or obligations. Hollow, 723 P.2d at 232. We held that the use of tax monies to satisfy private debts or obligations violated the requirement of Article VIII, Section 1 of the Montana Constitution that tax monies be used for public purposes. Hollow, 723 P.2d at 232. In the present case, no tax monies are being spent to satisfy private debts or for any other private purpose. Tax monies being used as a partial funding source for Northern continue to be used for that purpose, and Northern's leasing activities only enhance revenues available for capital costs and debt service which might otherwise require supplementation by the taxpayers. Thus, Hollow is inapplicable here.

We turn next to White Eagle Oil, the 1925 South Dakota case on which the Duck Inn urges us to rely in holding Northern's leasing activities unconstitutional under Article VIII, Section 1 of the Montana Constitution. There, a statute authorized the state to use highway funds obtained from gasoline taxes for the purpose of buying gasoline, oil and lubricants and selling them at retail. As the state began such activities, the plaintiffs-- retail gas distributors--brought an action challenging the constitutionality of the statute authorizing use of gas tax funds for the stated purpose. White Eagle Oil, 205 N.W. at 615-16. The plaintiffs contended that the statute violated the South Dakota Constitution's provision that taxes could be levied for public purposes only; the state contended that the statute was within its police power and, therefore, that the use of gas taxes permitted therein was a public purpose. White Eagle Oil, 205 N.W. at 618, 620. The South Dakota Supreme Court assumed arguendo that the statute was an exercise of the police power and, therefore, that the statutorily authorized use of gas taxes was a public purpose, effectively rejecting the plaintiffs' constitutional argument. It observed, however, that the law authorizing the levy of the gas tax specified that those taxes

were appropriated for the construction and repair of highways; on that basis, the court invalidated the statute under a constitutional provision which prohibited the diversion of funds levied for a specific purpose to another purpose.  White Eagle Oil, 205 N.W. at 620.

White Eagle Oil is of no assistance to the Duck Inn.  The South Dakota Supreme Court rejected the plaintiffs' constitutional argument--which was similar to that advanced by the Duck Inn here under the Montana Constitution--and held the statute unconstitutional for reasons not at issue in the present case.  White Eagle Oil has no application here.

Finally, we briefly address the other authorities from sister jurisdictions on which the Duck Inn relies, none of which supports its position in this case.  In Wheelon v. South Dakota Land Settlement Board (S.D. 1921), 181 N.W. 359, 360-62, a statute authorizing the levy of taxes for the purpose of state loans to settlers was held constitutional as a "public purpose."  Similarly, in Albritton v. City of Winona (Miss. 1938), 178 So. 799, 803-810, a depression-era tax to be levied for the purchase of land, construction of certain manufacturing enterprises and lease of the enterprises to a private firm or individual fit to operate the enterprises was upheld against a variety of constitutional challenges as promoting the public welfare.

The final case on which the Duck Inn relies is City of Cleveland v. Ruple (Ohio 1936), 200 N.E. 507.  There, the city used public funds for the construction and operation of an underground facility to be used for public exhibitions and vehicle parking in conjunction with public events at its nearby civic center. City of Cleveland, 200 N.E. at 508-509.  In its first 1½ years of operation, the facility was used for public purposes for a total of three months; it was operated as a parking garage in competition with private business the remainder of the time.  The receiver for a nearby private parking garage sued to enjoin the city from using the facility in the above-described manner and the Ohio Supreme Court held that it could be operated as a garage "so far as in doing so there is involved a public function."  City of Cleveland, 200 N.E. at 509, 511.  It is this holding on which the Duck Inn relies.

The facts in City of Cleveland are clearly distinguishable from those presently before us.  There, the "public" function of the facility was essentially incidental to the private use  being made of it, in that the facility was operated for public purposes only 17% of the time.  Indeed, the Ohio court distinguished City of Cleveland from the many cases holding "that public buildings may be temporarily let for a consideration, but

in our judgment the present case does not present a situation of that character."  City of Cleveland, 200 N.E. at 511.  The case before this Court does present a situation where Northern temporarily leases its facilities and the leasing is incidental to use of the facilities for the public purposes for which they were funded.  The record reflects, in fact, that less than 5% of the activities in the Northern facilities at issue are of a private social nature under leases with Northern.  Thus, City of Cleveland is readily distinguishable on the facts and, therefore, on the law.

We hold that the District Court did not err in concluding that õ 20-25-302, MCA (1993), and Northern's leasing activities thereunder, do not violate the Montana Constitution.  Affirmed.

/S/  KARLA M. GRAY


We concur:

/S/  JAMES C. NELSON
/S/  WILLIAM E. HUNT, SR.
/S/  TERRY N. TRIEWEILER
/S/  W. WILLIAM LEAPHART